**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND**
*Northern Division*

| | |
|---|---|
| SABRINA LUCERO, an individual, <br> *Pueblo County, CO* <br><br> DONOVAN MCCLURE, an individual, <br> *Pueblo County, CO* <br><br> KARIANE AMPARAN, an individual, <br> *Fremont County, CO* <br><br> on behalf of themselves and those similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> HORIZON LAND MANAGEMENT, LLC, <br> a Maryland limited liability company, and <br> *Anne Arundel County, MD* <br><br> RYAN HOTCHKISS, an individual, <br> *Anne Arundel County, MD* <br><br> Defendants. | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : Case No: <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : |

**COLLECTIVE AND CLASS ACTION COMPLAINT AND JURY DEMAND**

Plaintiffs Sabrina Lucero, Donovan McClure, and Kariane Amparan ("Plaintiffs"), on behalf of themselves and all others similarly situated, by and through undersigned counsel, complain as follows:

**NATURE OF THE ACTION**

1. This action is brought on behalf of all hourly employees holding comparable positions with different titles ("Hourly Employees")[1] employed by Horizon Land Management,

---

[1] Defendants employed similarly situated Hourly Employees in numerous roles including "Assistant Community Manager," "Community Manager," "Maintenance Technician," and others.

LLC ("HLM") and Ryan Hotchkiss ("Hotchkiss") (collectively "Defendants") in the United States during the last three (3) years, plus any period of tolling, and who were not properly paid overtime compensation.

2. This case is brought as a collective action under 29 U.S.C. § 216(b) of the Fair Labor Standards Act of 1938 ("FLSA"). Plaintiffs allege that Defendants violated the FLSA, 29 U.S.C. §§ 201 *et seq.*, by failing to pay Hourly Employees required overtime compensation.

3. This case is also brought as a class action under Fed. R. Civ. P. 23 pursuant to the Colorado Overtime and Minimum Pay Standards Order ("COMPS Order"), 7 CCR § 1103-1, and the Colorado Wage Act, C.R.S. § 8-4-101 ("CWA"). Plaintiffs allege that Defendants violated the COMPS Order by failing to pay Hourly Employees overtime compensation at applicable rates as required by law. Plaintiffs allege that Defendants violated the CWA by failing to pay all earned regular and overtime wages.

4. Plaintiff Sabrina Lucero, individually, asserts a claim on her own behalf under the CWA arising from Defendants' (a) failure to pay her final paycheck, and (b) failure to pay out all accrued, unused vacation time upon separation of employment.

## JURISDICTION AND VENUE

5. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). The citizenship of the parties is completely diverse. Each Plaintiff is domiciled in Colorado. Defendant HLM is a citizen of Maryland. Defendant Hotchkiss is domiciled in Maryland. The Defendants each transacted business in Maryland. HLM's company headquarters and principal place of business is in Maryland. All parties are citizens of and domiciled in different states.

6. Additionally, the amount in controversy exceeds $75,000 exclusive of interest and costs.

2

7. This Court also has original federal question jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs allege a claim under the FLSA.

8. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because the state law claims are so related to the FLSA claim that they form part of the same case or controversy.

9. Defendant HLM is subject to personal jurisdiction in this District because it is registered as a Maryland limited liability company, maintains its headquarters and primary office in this District, avails itself of the privilege of conducting substantial business in this District, and is otherwise at home in this District.

10. Defendant Hotchkiss is subject to personal jurisdiction in this District because he is a domiciliary of this District, avails himself of the privilege of conducting substantial business in this District, and is otherwise at home in this District.

11. Defendants are also subject to personal jurisdiction in this District because this action arises out Defendants' illegal pay practices that caused damage to employees in the State of Maryland and across the United States.

12. Defendants have also availed themselves of the privilege of conducting substantial business in numerous states, including Colorado, where Plaintiffs reside and work(ed) for Defendants and certain of the acts and omissions alleged herein arise out of Defendants' activities in Colorado.

## THE PARTIES

13. Plaintiffs are, and were at all times relevant to this action, adult individuals domiciled in Colorado.

14. Defendant HLM is a Maryland limited liability company. HLM maintains its

3

principal place of business at 151 Priest Bridge Drive, Suite 7, Crofton, Maryland 21114. HLM is registered in Colorado as a foreign limited liability company. HLM is registered as a foreign limited liability company in all other states in which it operates outside of Maryland.

15. Defendant Hotchkiss is the CEO and primary executive of HLM. Hotchkiss oversees all of HLM's operations including business strategy and development, compliance, investor relations, and budgeting. He is also responsible for related executive functions. Hotchkiss was and is vested with the authority to carry out the wage and hour policies of HLM.

16. Defendants are primarily in the business of owning, operating, and managing manufactured home communities. Defendants also sell and rent manufactured homes to buyers and tenants.[2]

## COLLECTIVE ACTION ALLEGATIONS

17. Plaintiffs seek to prosecute their FLSA claim as an "opt-in" collective action on behalf of all persons who are or were employed by Defendants as Hourly Employees in the United States at any time in the last three (3) years, plus any period of tolling, through the entry of judgment in this case and who were not paid overtime for all hours worked in excess of 40 in a work week ("Collective").

18. Plaintiffs will fairly and adequately protect the interests of the members of the Collective and have retained counsel who are experienced and competent in the fields of wage and hour law and collective action litigation. Plaintiffs have no interests contrary to or in conflict with the members of the Collective.

19. The members of the Collective are similarly situated because, among other things, they were all victims of the same company-wide policies and procedures that failed to pay them

---

[2] https://horizonlandmgmt.com/about-us/ (last accessed March 13, 2025).

all the wages to which they are entitled under the FLSA.

## CLASS ACTION ALLEGATIONS

20. Plaintiffs sue on their own behalf and on behalf of a class of employees under Rules 23(a), (b)(2), and/or (b)(3) of the Federal Rules of Civil Procedure based on Defendants' violations of the COMPS Order and the CWA.

21. Plaintiffs brings their Colorado state law claims on behalf of all employees who were employed by Defendants in Colorado as Hourly Employees at any time in the last three (3) years, plus any period of tolling, through the date of the entry of judgment in this case who hold or held the position of Hourly Employee and were not paid (a) regular straight time wages for hours worked below and at 40 hours in a work week, and/or (b) overtime compensation for all hours worked or at an appropriate rate of pay for all hours worked, including hours in excess of 40 in a work week and/or 12 in a work day ("Wage Class").

22. The members of the Wage Class are so numerous that joinder of them is impracticable. Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of Defendants, upon information and belief, there are hundreds of members of the Wage Class.

23. Plaintiffs' claims are typical of the claims of the members of the Wage Class. Plaintiffs performed the same essential job duties as the members of the Wage Class; Defendants paid Plaintiffs and the members of the Wage Class pursuant to the same policies and procedures; and Plaintiffs and the members of the Wage Class were victims of the same wrongful conduct in which Defendants engaged in violation of the COMPS Order and the CWA.

24. The class action mechanism is superior to any alternatives which may exist for the fair and efficient adjudication of this cause of action. Proceeding as a class action would permit

the large number of injured parties to prosecute their common claims in a single forum simultaneously, efficiently, and without unnecessary duplication of evidence, effort, and judicial resources. A class action is the only practical way to avoid the potentially inconsistent results that numerous individual trials are likely to generate. Moreover, class treatment is the only realistic means by which injured parties can effectively litigate against corporate defendants like Defendants. Numerous repetitive individual actions would also place an undue burden on the courts as they are forced to take duplicative evidence and decide the same issues relating to Defendants' conduct.

25.  Defendants have acted or refused to act on grounds generally applicable to the Wage Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Wage Class as a whole.

26.  Plaintiffs are committed to pursuing this action and have retained competent counsel who are experienced in wage and hour law and class action litigation.

27.  Plaintiffs will fairly and adequately protect the interests of the members of the Wage Class.

28.  There are questions of law and fact common to the Wage Class which predominate over any questions solely affecting the individual members of the Wage Class including but not limited to:

    a. Whether Defendants employed the members of the Wage Class within the meaning of the COMPS Order and the CWA;

    b. Whether Defendants' policies and practices described within this Complaint are illegal;

    c. Whether Defendants properly paid the members of the Wage Class for all hours,

     including hours worked over 40 hours in a work week and/or 12 hours in a work day;

  d.  Whether Defendants properly tracked and/or calculated the number of regular and overtime hours payable to the members of the Wage Class based on their work below, at, and beyond 40 hours in a work week and/or 12 hours in a work day;

  e.  What proof of hours worked is sufficient where, as here, Defendants failed in their duty to keep and maintain accurate time records; and

  f.  Whether Defendants are liable for all damages claimed hereunder.

## STATEMENT OF FACTS

29. Defendants own, operate, and manage manufactured home communities (*e.g.*, collect rents and mortgage payments, organize and carry out home repair and maintenance tasks, resolve non-monetary resident disputes, etc.). Defendants also sell and rent manufactured homes to buyers and tenants. Hourly Employees follow standardized processes involving well-established policies and procedures implemented by Defendants, and they work within closely prescribed limits imposed by Defendants. Defendants employ all Hourly Employees and establish their pay practices.

30. Hourly Employees are classified as non-exempt employees and are paid by the hour. Defendants provided Hourly Employees with compensatory time ("Comp Time") in lieu of cash wages for hours worked over 40 in a work week or 12 in a work day.

31. Defendants employed Lucero first as an Assistant Community Manager from approximately March 2022 to June 2022 and then as a Community Manager from approximately June 2022 to February 2025. Lucero worked at Defendants' locations in Pueblo, Colorado and Cañon City, Colorado.

32.  Lucero's hourly rate was $22.07. Lucero regularly worked at least 50 hours per week and received Comp Time for hours worked over 40 in a work week. Lucero did not receive overtime pay.[3]

33.  Defendants employed McClure as a Maintenance Technician from approximately January 6, 2023 to February 28, 2025. McClure primarily worked at Defendants' locations in Pueblo, Colorado and Cañon City, Colorado. McClure also worked for Defendants at other locations in Colorado: Montrose, Grand Junction, Craig, and Hayden.

34.  McClure's hourly rate was $18.41. McClure regularly worked at least 50 hours per week and received Comp Time for hours worked over 40 in a work week. McClure did not receive overtime pay.

35.  Defendants have employed Amparan as a Community Manager since approximately June 13, 2022. Amparan works at Defendants' Cañon City, Colorado location.

36.  Ampara initially received an hourly rate of $18.00 before receiving a raise to $19.86. Amparan regularly works at least 45 hours per week and receives Comp Time for hours worked over 40 in a work week. Ampara does not receive overtime pay.

37.  At the beginning of each Plaintiff's employment with Defendants, they were provided an offer letter stating "[t]his position is classified as 'non-exempt' as defined by the [FLSA]. As an [sic] 'non-exempt' employee, you are eligible for compensatory time for hours worked over 40 in a workweek." *See* Exhibit 1, Lucero Offer Letter; Exhibit 2, Amparan Offer Letter.

38.  Plaintiffs' assigned schedules were set by Defendants' corporate office in

---

[3] Defendants failed to tender Plaintiff Lucero her final paycheck and accrued, unused paid time off after her separation from Defendants' employment. *See* C.R.S § 8-4-109(1)(a).

8

Maryland. Plaintiffs were assigned to work 40 hours each week (*e.g.*, 9:00 a.m. to 5:00 p.m., Monday through Friday). Plaintiffs typically worked more than their assigned schedules. Plaintiffs regularly worked 10 or more hours in individual work days. Plaintiffs were required to work (on and off premises) before and after regular assigned hours and weekends at the specific direction of Defendants.

39.     Plaintiffs were required by Defendants to work more than 40 hours each week based on the demands of Defendants' business. Plaintiffs were also required to be available for "on-call" work in addition to extra hours spent working at Defendants' properties. Plaintiffs were each provided a company cell phone that they were required to always answer. Plaintiffs were not permitted to turn down on-call work or assignments.

40.     During 2022, Defendants did not maintain a time-keeping system. Defendants implemented a handwritten timesheet policy in approximately October or November of 2023.

41.     Plaintiffs were initially instructed by their Senior Regional Manager and other corporate employees (*i.e.*, Sarah Winters and Amy Thorne) not to record hours worked over 40 in a work week. Plaintiffs were told by Defendants that hours recorded over 40 in a work week would not be paid. Defendants, either themselves or by instruction to Plaintiffs, would shorten (*i.e.*, remove or delete) Friday hours to give the appearance that Plaintiffs did not work more than 40 hours in individual work weeks. At times, Plaintiffs did not receive all earned straight time wages due to this policy.[4]

42.     When Plaintiffs worked more than 40 hours in a work week, they were given Comp Time – or paid time off from work – instead of cash overtime wages. Defendants did not track

---

[4] To the extent these hours exceeded 40 in a work week, Plaintiffs are owed the entire 1.5x rate of pay.

9

Comp Time through any formal procedure or system.

43. Defendants awarded one hour of Comp Time for every hour worked over 40 in a work week, even though overtime was due at 1.5x the regular rate of pay.

44. In or around October or November 2023, Plaintiffs were told they could record some, but not all, hours worked over 40 in a workweek to receive Comp Time. Plaintiffs recorded Comp Time on timesheets to the extent permitted by Defendants. Plaintiffs also informed the Regional Manager or other corporate employee that they worked Comp Time through phone call, email, or text message.

45. Defendants required all Comp Time hours to be used within the next work week or they were forfeited. Due to the work demands imposed on Plaintiffs by Defendants, Plaintiffs were rarely, if ever, able to use their Comp Time. Defendants regularly denied Plaintiffs' requests to take time off with earned Comp Time. Plaintiffs received no benefit for working more than 40 hours in a work week.

46. Defendants implemented this policy across all locations in the United States. On November 28, 2023, Defendants uploaded an instructional video to their YouTube channel titled "HLM Timesheet Procedure."[5] The video describes HLM's paper timesheet process for Hourly Employees. Defendants explain their Comp Time procedure (as well as their "on-call" or "after hours" procedures) within the instructional video. The video was distributed to HLM employees nationwide.

47. Over the course of each Plaintiff's employment, s/he questioned Defendants' Comp Time practice and raised concerns and complaints about the policy with Regional Managers and

---

[5] https://www.youtube.com/watch?v=JFEXX2hdpvA (last accessed March 13, 2025).

other corporate employees. Despite these complaints, Defendants never changed their pay practice.[6]

48.     Plaintiffs' job duties and tasks were highly regulated and controlled, sometimes on a step-by-step and incremental level, by Defendants. Plaintiffs and members of the Collective and Wage Class were prohibited from exercising discretion and independent judgment as to matters of significance within Defendants' operations.

49.     Plaintiffs and members of the Collective and Wage Class were directed by Defendants to strictly adhere to corporate policies implemented by Defendants.

50.     Plaintiffs and members of the Collective and Wage Class participated and engaged in essential job duties and tasks on a daily basis that directly related and contributed to Defendants' primary business of managing, selling, and renting manufactured home properties for profit.

51.     Defendants illegally applied their Comp Time policy as to Plaintiffs and members of the Collective and Wage Class.

52.     Plaintiffs regularly worked more than 40 hours each week but never received overtime premiums at one and one-half their regular rates of pay for hours worked over 40 in individual work weeks and/or 12 hours in a work day.

53.     Plaintiffs and all other Hourly Employees were employed under identical or substantially similar terms. All Hourly Employees were provided identical or substantially similar copies of offer letters, employee handbooks, and other employment documents at the start of their employment.

---

[6] On information and belief, Defendants received at least one communication from the Colorado Department of Labor and Employment advising them of the illegality of their Comp Time practice, but no changes were made.

54. The common terms of employment for Hourly Employees, including the pay practices identified herein, were intentionally and purposefully made identical by Defendants.

55. The uniform and common practices and policies implemented by Defendants, including the job duties and compensation structure, applied to all Hourly Employees, including Plaintiffs.

56. Defendants previously employed Plaintiffs Lucero and McClure. Defendants continue to employ Amparan and other members of the Collective and Wage Class as alleged herein.

57. Plaintiffs and members of the Wage Class were entitled to the wage protections afforded by the CWA which apply to timely payment of all earned wages.

58. Defendants failed to pay Plaintiffs and members of the Collective and Wage Class overtime wages.

59. Defendants failed to pay Plaintiffs and members of the Collective and Wage Class earned regular straight time wages for certain hours worked below and up to 40 hours in a work week.

60. Defendants have uniform policies and practices to not pay Hourly Employees for all hours worked below, at, and above 40 each work week and/or 12 work day.

61. Defendants' violations of the FLSA are not in good faith. Defendants are, and have been, well aware of their legal obligation to pay overtime compensation to Plaintiffs and members of the Collective.

62. Defendants' violations of the CWA are not in good faith. Defendants are, and have been, well aware of their legal obligation to pay all earned wages to Plaintiffs and members of the Wage Class.

## FIRST CLAIM FOR RELIEF
### FAIR LABOR STANDARDS ACT – COLLECTIVE ACTION

63. Plaintiffs incorporate by reference all preceding paragraphs of this Complaint.

64. At all relevant times, HLM has been, and continues to be, an employer engaged in interstate commerce within the meaning of the FLSA.

65. At all relevant times, HLM has had gross annual revenues in excess of $500,000.

66. At all relevant times, Defendants employed, and/or continue to employ, Plaintiffs and each member of the Collective within the meaning of the FLSA.

67. At all relevant times, Defendants have had a uniform policy and practice to not pay overtime compensation for all overtime hours worked at legally mandated rates.

68. As a result of Defendants' failure to properly compensate their employees, including Plaintiffs and the members of the Collective, Defendants have violated, and continue to violate, the FLSA.

69. As employers within the meaning of the FLSA, Defendants have a duty to create and maintain accurate records of employee hours. Defendants failed to do so.

70. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

71. Due to Defendants' FLSA violations, Plaintiffs, on behalf of themselves and the members of the Collective, are entitled to recover from Defendants unpaid overtime compensation, liquidated damages, Defendants' share of FICA, FUTA, state unemployment insurance, and any other required employment taxes, attorneys' fees, costs, and disbursements of this action pursuant to 29 U.S.C. § 216(b).

## SECOND CLAIM FOR RELIEF
### COMPS ORDER – CLASS ACTION

72. Plaintiffs incorporate by reference all preceding paragraphs of this Complaint.

73. At all relevant times, Defendants employed, and/or continue to employ, Plaintiffs and members of the Wage Class within the meaning of the COMPS Order.

74. Because Defendants were, at all relevant times, employers within the meaning of the FLSA, they were also employers within the meaning of the COMPS Order pursuant to 7 CCR § 1103-7-2.7.

75. Defendants violated the COMPS Order by failing to pay Hourly Employees all overtime compensation to which they are entitled at the legally required rates.

76. Plaintiffs and the members of the Wage Class are entitled to recover from Defendants overtime compensation at the appropriate premium for all hours worked over 40 in a work week and 12 in a work day, any statutory penalties, Defendants' share of FICA, FUTA, state unemployment insurance, and any other required employment taxes, attorneys' fees, costs, and disbursements of this action pursuant to the COMPS Order.

## THIRD CLAIM FOR RELIEF
### COLORADO WAGE ACT – CLASS ACTION

77. Plaintiffs incorporate by reference all preceding paragraphs of this Complaint.

78. At all relevant times, Defendants employed, and/or continue to employ, Plaintiffs and the members of the Wage Class within the meaning of C.R.S. § 8-104-101(5).

79. Because Defendants were, at all relevant times, employers within the meaning of the FLSA, they were also employers within the meaning of the CWA pursuant to C.R.S. § 8-104-101(6).

80. The CWA defines wages as "[a]ll amounts for labor or service performed by employees," regardless of whether "the amount is fixed or ascertained by the standard of time." Wages, as defined by the CWA, are governed by the CWA once the amounts are "earned, vested, and determinable." C.R.S. § 8-4-101(14)(a)(I)-(III).

81. Pursuant to the CWA, C.R.S. § 8-4-101(14)(a)(II)-(III), Plaintiffs and members of the Wage Class worked hours below or at 40 hours in individual work weeks which were required to be paid at their regular hourly rates of pay.

82. Pursuant to the CWA, C.R.S. § 8-4-101(14)(a)(II)-(III), Plaintiff and members of the Wage Class worked over 40 in individual work weeks and/or 12 in a work day, which required pay at one-and-one-half (1.5) their regular hourly rates of pay.

83. Once Plaintiffs and members of the Wage Class worked hours below, at, and above 40 in individual work weeks, they earned regular and/or overtime wages, although they were not paid. Accordingly, any regular or overtime wages for which Plaintiffs and members of the Wage Class were not paid were and are "wages" as defined by the CWA, and therefore subject to the requirements of the CWA.

84. Pursuant to C.R.S. § 8-4-109(3)(b)(I), if an employer fails to pay an employee earned, vested, and determinable wages as set forth by the CWA within fourteen (14) days of service of a civil action, the employee is entitled to a penalty of two (2) times the amount of unpaid wages or compensation.

85. Pursuant to C.R.S. § 8-4-109(3)(b)(I), if the employee can prove that the employer's failure to pay wages due under the CWA was willful, the employee is entitled to a penalty of three (3) times the amount of unpaid wages or compensation.

86. Defendants' failure and refusal to pay earned regular and/or overtime wages, as

demanded herein within the fourteen (14) day period described by C.R.S. § 8-4-109(3)(a), was willful and in bad faith.

87. Plaintiffs and members of the Wage Class are owed all earned, unpaid wages and statutory penalties, including increased penalties for willful violations of the CWA.

88. Per C.R.S. § 8-4-110, Plaintiffs and members of the Wage Class are entitled to attorneys' fees and costs incurred prosecuting claims under the CWA.

## FOURTH CLAIM FOR RELIEF
### COLORADO WAGE ACT – LUCERO INDIVIDUALLY

89. Plaintiff Lucero incorporates by reference all preceding paragraphs of Complaint.

90. Plaintiff Lucero was an employee within the meaning of C.R.S. § 8-104-101(5).

91. Defendants were employers within the meaning of C.R.S. § 8-104-101(6).

92. The CWA defines wages as "[a]ll amounts for labor or service performed by employees," and includes "bonuses or commissions earned for labor or services performed in accordance with the terms of any agreement between the employer and employee" and "vacation pay earned in accordance with the terms of any agreement." *See* Colo. Rev. Stat. §§ 8-4-101(14)(a)(I)-(III).

93. Lucero had a right to payment of all final wages including earned, unpaid wages and accrued, unused vacation upon separation. *See* C.R.S. § 8-4-109(1)(a).

94. Pursuant to C.R.S. § 8-4-109(3)(b)(I), if an employer fails to pay an employee earned, vested, and determinable wages as set forth by the CWA within 14 days of service of a civil action, the employee is entitled to a penalty of two times the amount of unpaid wages or compensation.

95. Pursuant to C.R.S. § 8-4-109(3)(b)(I), if an employer's failure to pay wages due under the CWA was willful, the employee is entitled to a penalty of three times the amount of

16

unpaid wages or compensation.

96. Defendants' failure and refusal to pay Plaintiff Lucero's earned, vested, and determinable final wages and accrued, unused vacation pay as demanded within the 14-day period described by C.R.S. § 8-4-109(3)(a) was willful and in bad faith.

97. Plaintiff Lucero is owed all earned, vested, and determinable amounts and statutory penalties, including increased penalties for willful violations of the CWA.

98. Per C.R.S. § 8-4-110, Plaintiff Lucero is entitled to attorneys' fees and costs incurred prosecuting claims under the CWA.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs, on behalf of themselves and all other members of the Collective and Wage Class, requests that this Court grant the following relief:

a. Designation of this action as a collective action on behalf of the members of the Collective and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly-situated members of the FLSA collective, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual consents to sue pursuant to 29 U.S.C. § 216(b), and tolling of the statute of limitations;

b. Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(b)(3) on behalf of the members of the Wage Class and appointing Plaintiffs and their counsel to represent the Wage Class;

c. A declaratory judgment that the practices complained of herein are unlawful under the FLSA, COMPS Order, and CWA;

d. An injunction requiring Defendants to cease their unlawful practices under, and to

    comply with, the COMPS Order and CWA;

e. An award of overtime compensation due under the FLSA and the COMPS Order;

f. An award of unpaid, earned, and vested regular wages under the CWA;

g. An award of liquidated damages and/or statutory penalties under the FLSA and CWA;

h. An award of additional damages and/or statutory penalties under the FLSA and CWA as a result of Defendants' willful failure to properly pay regular and/or overtime compensation;

i. An award of damages representing Defendants' share of FICA, FUTA, state unemployment insurance, and any other required employment taxes;

j. An award of pre-judgment and post-judgment interest at the maximum rate permitted by law;

k. An award of unpaid, earned, and vested final wages and unused, accrued vacation owed to Lucero individually under the CWA;

l. An award of additional damages and/or statutory penalties under the CWA as a result of Defendants' willful failure to pay earned, vested, and determinable final wages and unused, accrued vacation owed to Lucero individually;

m. An award of costs and expenses of this action together with attorneys' and expert fees; and

n. Such other and further relief as this Court deems just and proper.

Plaintiffs hereby demand a **TRIAL BY JURY**.

Respectfully submitted this 19th day of March, 2025.

                                    /s/ Vincent Z. Viruni, Esq.
                                    Vincent Z. Viruni, Esq. (20414)

                                      Viruni | Law
                                      137 National Plaza, Suite 300
                                      National Harbor, MD 20745
                                      Phone: (866) 405-1615
                                      Fax: (866) 321-1102
                                      vviruni@virunilaw.com

                                      Andrew E. Swan (*pro hac vice* forthcoming)
                                      Colorado Bar No. 46665
                                      Samuel D. Engelson (*pro hac vice* forthcoming)
                                      Colorado Bar No. 57295
                                      LEVENTHAL SWAN TAYLOR TEMMING PC
                                      3773 Cherry Creek North Drive, Suite 710
                                      Denver, Colorado 80209
                                      Telephone: (720) 699-3000
                                      Facsimile:  (866) 515-8628
                                      Email:         aswan@lstt.law
                                                      sengelson@lstt.law

                                      *Counsel for Plaintiffs*

Plaintiffs' Addresses:

Sabrina Lucero
398 East Hemlock Drive
Pueblo West, Colorado 81007
Pueblo County, Colorado

Donovan McClure
804 West Abriendo Avenue
Pueblo, Colorado 81004
Pueblo County, Colorado

Kariane Amparan
2795 Elizabeth Avenue, Lot 47
Cañon City, Colorado 81212
Fremont County, Colorado

Defendants' Addresses:

Horizon Land Management, LLC
151 Priest Bridge Drive, Suite 7
Crofton, Maryland 21114
Anne Arundel County, Maryland

Ryan Hotchkiss

19

151 Priest Bridge Drive, Suite 7
Crofton, Maryland 21114
Anne Arundel County, Maryland