IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND
*Northern Division*

| | | |
|---|---|---|
| SABRINA LUCERO, an individual,<br>*Pueblo County, CO* | : | |
| | : | |
| DONOVAN MCCLURE, an individual,<br>*Pueblo County, CO* | : | |
| | : | |
| KARIANE AMPARAN, an individual,<br>*Fremont County, CO* | : | |
| | : | |
| on behalf of themselves and those similarly situated, | : | |
| | : | |
| Plaintiffs, | : | Case No: 25-cv-00903-JKB |
| | : | |
| v. | : | |
| | : | |
| HORIZON LAND MANAGEMENT, LLC,<br>a Maryland limited liability company, and<br>*Anne Arundel County, MD* | : | |
| | : | |
| RYAN HOTCHKISS, an individual,<br>*Anne Arundel County, MD* | : | |
| | : | |
| Defendants. | : | |

**PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION OF
COLLECTIVE ACTION OF FAIR LABOR STANDARDS ACT CLAIM**

Plaintiffs Sabrina Lucero, Donovan McClure, and Kariane Amparan ("Plaintiffs"), on behalf of themselves and all others similarly situated, by and through counsel, Leventhal Swan Taylor Temming PC and Viruni Law, submit their Motion for Conditional Certification of Fair Labor Standards Act Claim ("Motion") as follows:

**INTRODUCTION**

Defendants own, operate, and manage manufactured home communities (*e.g.*, collect rents and mortgage payments, organize and carry out home repair and maintenance tasks, resolve non-monetary resident disputes, etc.) throughout the United States. *See* Complaint ("Compl."), ¶ 29;

*See* Defendants' Answer ("Ans."), ¶ 29. Defendants also sell and rent manufactured homes to buyers and tenants at each location. *Id*. Defendants employ various hourly employees in different roles to operate their communities (*e.g.*, Community Managers, Assistant Community Managers, Maintenance Technicians, etc.) ("Hourly Employees"). Compl., at ¶ 1; Ans., at ¶ 30.[1] Hourly Employees perform their roles at the direction of Defendants. Hourly Employees follow standardized processes involving well-established techniques and procedures, and they work within closely prescribed limits. Compl., at ¶ 29. Defendants employ all Hourly Employees and establish their pay practices. Compl., at ¶¶ 29-30; Ans., ¶¶ 29-30.

Hourly Employees regularly work more than 40 hours per workweek but do not receive any overtime compensation. Compl*.,* at ¶¶ 30, 32, 34, 36. Instead, Defendants provided Hourly Employees with compensatory time ("Comp Time")—or paid time off from work—instead of cash overtime wages for hours worked over 40 in a work week or 12 in a work day. *Id.* Defendants awarded one hour of Comp Time for every hour worked over 40 in a work week, even though overtime was due at 1.5x the regular rate of pay. *Id.* at ¶ 43.

As non-exempt employees within the meaning of the Fair Labor Standards Act of 1939 ("FLSA"), 29 U.S.C. §§ 201 *et seq*. and the accompanying regulations, they are entitled to overtime protections.[2] *See* 29 C.F.R. § 778.107. Defendants, however, systematically deprive their Hourly Employees, including Plaintiffs, of overtime wages in violation of the FLSA. Defendants specifically have a company-wide policy of routinely requiring Hourly Employees to work well in

---

[1] These titles include, but are not limited to: Community Manager; Assistant Community Manager; Maintenance Technician; etc.

[2] Hourly Employees are entitled to overtime protections based on their job duties. They do not perform work requiring advanced knowledge, or requiring the consistent exercise of discretion and judgment.

excess of 40 hours per work week using pay practices that do not properly compensate these employees for their work.

Plaintiffs thus seek conditional collective action certification and court-approved notice to a collective of all Hourly Employees (regardless of the actual title bestowed upon them) who worked for Defendants at any time during the last three years plus any period of tolling (the "Collective"). As set out below, Plaintiffs easily cross the low hurdle for conditional certification which requires nothing more than "substantial *allegations* that the putative class members were together the victims of a single decision, policy, or plan." *Jackson v. American Electronic Warfare Associates, Inc.*, 2023 WL 5154518, at *3 (D. Md. 2023) (citing *Thiessen v. GE Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001)) (emphasis added). Accordingly, this Court should conditionally certify this collective and order notice be sent to, and posted for, the Collective. Without prompt notice and an opportunity to join this case, these Hourly Employees' claims will erode under the FLSA's statute of limitations.

## FACTUAL BACKGROUND

Plaintiffs set forth the following "substantial allegations" required for conditional certification under § 216(b) of the FLSA:

1. Defendants employed Lucero first as an Assistant Community Manager from approximately March 2022 to June 2022 and then as a Community Manager from approximately June 2022 to February 2025. Lucero worked at Defendants' locations in Pueblo, Colorado and Cañon City, Colorado. Lucero's hourly rate was $22.07. Lucero regularly worked at least 50 hours per week and received Comp Time for hours worked over 40 in a work week. Lucero did not

receive overtime pay.³ Compl. at ¶¶ 31-32; Ans. at ¶¶ 31-32; Group Exhibit 1, Plaintiffs' Declarations.

2.  Defendants employed McClure as a Maintenance Technician from approximately January 6, 2023 to February 28, 2025. McClure primarily worked at Defendants' locations in Pueblo, Colorado and Cañon City, Colorado. McClure also worked for Defendants at other locations in Colorado: Montrose, Grand Junction, Craig, and Hayden. McClure's hourly rate was $18.41. McClure regularly worked at least 50 hours per week and received Comp Time for hours worked over 40 in a work week. McClure did not receive overtime pay. Compl., at ¶¶ 33-34; Ans., at ¶¶ 33-34; Group Exhibit 1, Plaintiffs' Declarations.

3.  Defendants have employed Amparan as a Community Manager since approximately June 13, 2022. Amparan works at Defendants' Cañon City, Colorado location. Ampara initially received an hourly rate of $18.00 before receiving a raise to $19.86. Amparan regularly works at least 45 hours per week and receives Comp Time for hours worked over 40 in a work week. Amparan does not receive overtime pay. Compl., at ¶¶ 35-36; Ans., at ¶¶ 35-36; Group Exhibit 1, Plaintiffs' Declarations.

4.  At the beginning of each Plaintiffs received offers letters before starting employment with Defendants stating "[these positions are] classified as 'non-exempt' as defined by the [FLSA]. As an [sic] 'non-exempt' employee, you are eligible for compensatory time for hours worked over 40 in a workweek." *See* Group Exhibit 2, Lucero and Amparan Offer Letters; Compl., at ¶ 37; Ans., at ¶ 37.

5.  Plaintiffs were required by Defendants to work more than 40 hours each week based

---

³ Defendants failed to tender Plaintiff Lucero her final paycheck and accrued, unused paid time off after her separation from Defendants' employment. *See* C.R.S § 8-4-109(1)(a).

on the demands of Defendants' business. Plaintiffs were also required to be available for "on-call" work in addition to extra hours spent working at Defendants' properties. Plaintiffs were each provided a company cell phone that they were required to always answer. Plaintiffs were not permitted to turn down on-call work or assignments. Compl., at ¶ 39; Group Exhibits 1-2.

6. When Plaintiffs worked more than 40 hours in a work week, they were given Comp Time—or paid time off from work—instead of cash overtime wages. Defendants did not track Comp Time through any formal procedure or system. Compl., at ¶ 42; Group Exhibits 1-2.

7. Defendants awarded one hour of Comp Time for every hour worked over 40 in a work week, even though overtime was due at 1.5x the regular rate of pay. Compl., at ¶ 43; Group Exhibits 1-2.

8. Defendants implemented this policy across all locations in the United States. On November 28, 2023, Defendants uploaded an instructional video to their YouTube channel titled "HLM Timesheet Procedure."[4] The video describes HLM's paper timesheet process for Hourly Employees. Defendants explain their Comp Time procedure (as well as their "on-call" or "after hours" procedures) within the instructional video. The video was distributed to HLM employees nationwide. Compl., at ¶ 46; Ans., at ¶ 46; Group Exhibits 1-2.

9. On November 29, 2023, Ashely Cyrus, Defendants' Director of Human Resources, sent an email out to all regional managers explaining the "new timekeeping procedure." *See* Exhibit 3, Cyrus Email. Ms. Cyrus informed regional managers across the United States that Houry Employees "need to indicate actual hours worked on the days they were worked, as well as any additional hours [such as] Comp Time." *Id.* Ms. Cryus informed regional managers that "[a]ny

---

[4] https://www.youtube.com/watch?v=JFEXX2hdpvA (last accessed March 13, 2025).

additional hours worked [by Hourly Employees] after Friday at noon or over the weekend should be included on their timesheet for the following week."[5] *Id*.

10. Ms. Cryrus's email states that this policy applied to "Maintenance/Assistant [Community Managers] ... [and] [o]ther hourly staff" and "[Community Managers]." *Id*.

11. Ms. Cyrus directed all regional managers to "advise your team that we will go live with this new timekeeping method of Monday, 12/04/23" and to share "[the HLM Timesheet Procedure YouTube] link … for your teams … [p]lease have them watch the video." *Id*.

12. Over the course of each Plaintiff's employment, s/he questioned Defendants' Comp Time practice and raised concerns and complaints about the policy with Regional Managers and other corporate employees.

13. Plaintiffs and all other Hourly Employees were employed under identical or substantially similar terms. *See* Compl., *passim*; Exhibits 1-3. All Hourly Employees were provided identical or substantially similar copies of offer letters, employee handbooks, and other employment documents at the start of their employment. *See id*.

## ARGUMENT

### I. OVERVIEW OF THE FLSA AND THE LENIENT FIRST STEP OF THE TWO-TIER FLSA CERTIFICATION ANALYSIS.

The purpose of the FLSA is to "eliminate" unfair labor practices because their existence "burdens commerce and the free flow of goods," "constitutes an unfair method of competition," and "leads to labor disputes." 29 U.S.C. § 202(a), (b). In furtherance of these policies, the FLSA requires employers to pay their non-exempt employees straight-time compensation of not less than

---

[5] This policy is inconsistent with the "basic workweek" imposed by C.F.R. § 610.111(a)(1)-(2).

6

$7.25 per hour and overtime compensation at a rate of one-and-one-half the employee's regular rates of pay for all hours worked in excess of 40 per workweek. *See* 29 U.S.C. §§ 206, 207(a)(1).

The FLSA provides a right of action for employees to recover damages for violations of the overtime provision and further empowers them to pursue claims on a collective basis on behalf of similarly situated employees. 29 U.S.C. § 216(b) specifically provides:

> An action to recover the liability prescribed in [§§ 206 or 207] may be maintained against any employer … in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

FLSA certification is a two-stage process in the the District of Maryland and the broader Fourth Circuit.[6] *See Butler v. DirectSAT USA, LLC,* 876 F.Supp.2d 560, 566 (D. Md. 2012); *Enkhbayar Choimbol v. Fairfield Resorts, Inc.*, 475 F.Supp.2d 557, 562 (E.D. Va. 2006); *Romero v. Mountaire Farms, Inc.*, 796 F.Supp.2d 700, 705 (E.D.N.C. 2011). The first is a "notice stage" where courts use a "fairly lenient standard" to determine whether plaintiffs are similarly situated for purposes of sending notice to putative class members. *Lancaster v. FQSR*, 2020 WL 5500227, at *3 (D. Md. 2020). The FLSA collective-action standard is "considerably less stringent than the standard for class certification under Federal Rule of Civil Procedure 23" and "typically results in conditional certification" of a representative class. *Pontones v. San Jose Restaurant Incorporated*, 2019 WL 5680347, at *4 (E.D.N.C. 2019); *Lancaster*, 2020 WL 5500227 at *3 (D. Md. 2020).

First-stage certification requires nothing more than "substantial allegations" that the "putative class members were together the victims of a single decision, policy, or plan." *Thiessen*,

---

[6] "The United States Court of Appeals for the Fourth Circuit has not provided specific guidance on how to address a motion for conditional certification of an FLSA collective action." *Lancaster*, 2020 WL 5500227 at *2.

267 F.3d at 1102; *Jackson*, 2023 WL 5154518 at *3. Where putative collective members are employed in similar positions, the allegation that defendant engaged in a pattern or practice of not complying with the FLSA is sufficient to meet this burden. *See Gipson v. Southwestern Bell Tel. Co.*, 2009 U.S. Dist. LEXIS 33478, *11-12 (D. Kan. 2009). Plaintiff need only allege a "reasonable basis" for his claim that there are other similarly situated employees. *Hart v. Barbeque Integrated, Inc.*, 299 F.Supp.3d 762, 771 (D.S.C. 2017). The situations of the named plaintiffs and the putative class "need not be identical." *Byard v. Verizon West Virginia, Inc.*, 287 F.R.D. 365, 369 (N.D. W.Va. 2012). Indeed, "[t]he burden in this preliminary certification is light because the risk of error is insignificant: should further discovery reveal that the named positions, or corresponding claims, are not substantially similar the defendants will challenge the certification." *Alderoty v. Maxim Healthcare Services, Inc.*, 2015 WL 5675527, at *10 (D. Md. 2015). "To impose a strict standard of proof would unnecessarily hinder the development of collective actions and would undermine the 'broad remedial goals' of the FLSA." *Garner v. G.D. Searle Pharm. & Co.*, 802 F. Supp. 418, 422 (M.D. Ala. 1991).

Once a court conditionally certifies a collective, potential class members can then "opt-in." *Purdham v. Fairfax Cnty. Public Schools*, 629 F.Supp.2d 544, 547 (E.D. Va. 2009). Unlike Fed. R. Civ. P. 23 class actions, however, a person does not become a member of the FLSA collective, and his or her statute of limitations is not tolled, until he or she files a consent to be a part of the action. *See Hoffman-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 168-69 (1989). After notice is sent and discovery is completed, the Court may consider second-stage certification, which often arises in the context of a defense motion to decertify the collective. *See Daugherty v. Encana Oil & Gas (USA), Inc.*, 838 F.Supp.2d 1127, 1133 (D. Colo. 2011). During this second stage, the Court applies a somewhat stricter standard to determine whether the case can proceed on a collective basis. *Id*.

The court proceeds to stage two "if the defendant files a motion for decertification, usually after discovery is virtually complete." *Enkhbayar Choimbol*, 475 F.Supp.2d at 563.

## II. PLAINTIFFS EASILY MEET THE MODEST FACTUAL SHOWING REQUIRED FOR FIRST STAGE CONDITIONAL CERTIFICATION.

This Motion seeks first stage certification of a collective: Defendnats' Hourly Employees. As set forth in the attached sworn declarations and other exhibits, all of these individuals were subject to the same unlawful policies that failed to properly account for compensable work and routinely worked more than 40 hours per workweek. *See* Exhibits 1-3. As a result of Defendants' unlawful policies, Plaintiffs alleges they and other Hourly Employees performed overtime work without the compensation required by the FLSA.

At this very early stage of the litigation, Plaintiffs' allegations, declaration testimony, and other exhibits constitute (at least) the requisite modest factual showing that Hourly Employees were common victims of a policy and practice designed to deny them overtime compensation. This evidence is sufficient for conditional collective certification in the this District. *Jackson*, 2023 WL 5154518, at *3 (D. Md. 2023) (holding that initial certification of hourly engineers' proposed collective action against aerospace company under the FLSA was warranted where the named plaintiff submitted a declaration asserting that all hourly employees, regardless of where they worked and whatever their specific job titles were, were similarly situated, and that the employer treated them all the same as to the FLSA's overtime requirements); *Daugherty*, 838 F.Supp.2d at 1132-33 (holding that allegations in first amended complaint supported by affidavits of two other employees was sufficient under the lenient standard of FLSA collective certification).

Accordingly, this Court should conditionally certify a collective of Hourly Employees who worked for Defendants during the last three years and who were only provided Comp Time in lieu of cash overtime wages.

### III. THIS COURT SHOULD APPROVE THE PROPOSED NOTICE AND CONSENT FORM.

This Court has discretion to facilitate notice to potential collective members by authorizing judicial notice of the collective action. *Hoffmann-LaRoche Inc.*, 493 U.S. at 170. Notice to prospective collective members "represents not an official communication from the Court but is instead a communication from the plaintiff and plaintiffs' counsel to other prospective class members." *King v. ITT Cont. Baking Co.*, 1986 U.S. Dist. LEXIS 29321, *7 (N.D. Ill. Feb. 18, 1986). "The Court has both the power and duty to ensure fair and accurate notice, [but] that power should not be used to alter plaintiffs' proposed notice unless such alternation is necessary." *Heitmann v. City of Chicago*, 2004 U.S. Dist. LEXIS, *10 (N.D. Ill. 2004); *Brown v. Energy Services Group International, Inc.*, 2021 WL 5889707, at *3 (E.D. Va. 2021).

Here, Plaintiffs request the Court approve notice in the forms and mediums attached as Group Exhibit 4 to be sent to a putative collective defined as follows:

> All current and former Hourly Employees (regardless of actual title) who were employed by Defendants in the United States during the three years preceding the filing of this case.

Plaintiffs request the Court authorize them to send notice and a reminder to affected employees at their last known mailing and email addresses. *See Butler v. DirectSAT USA, LLC*, 876 F.Supp.2d 560, 575 (D. Md. 2012) (cleaned up) (25060"communication through email is [now] the norm"); *Biscardi v. Government Employees Insurance Company*, 2023 WL 155238, at *5 (D. Md. 2023) ("courts in the Fourth Circuit have frequently permitted FLSA notices to be distributed via text and email … the Court will permit notices to be sent via mail, text, and email, and will permit the sending of one reminder notice through mail and email, as requested.")

Furthermore, Plaintiffs request this Court order Defendants to conspicuously post the notice at each of its, and its customers', worksites in an area readily and routinely available for

review by Hourly Employees. *See Clark v. Williamson,* 2018 WL 1626305, at *7 (M.D.N.C. 2018) (notice by regular mail, email, and posting in a prominent location in the employer's offices are not unduly burdensome and are appropriate to further the remedial purpose of the FLSA by providing notice to collective members."); *Irvine v. Destination Wild Dunes Management, Inc.*, 132 F.Supp.3d 707, 712 (D.S.C. 2015) ("The Court finds that notice posted at the workplace is a reasonable and effective method to alert putative class members of their right to opt-in. Defendants are directed to post the notice in a prominent place in the immediate vicinity of each work location where putative class members clock or sign in to work during the 90–day notice period.").

In furtherance of issuing the notice, Plaintiffs also request this Court order Defendants to produce the names, mailing addresses, dates of employment, job titles, job locations, phone numbers, and e-mail addresses of all potential members of the Collective in an electronic readable format to facilitate notice to potential plaintiffs of the pending lawsuit. Finally, Plaintiffs request the Court order a ninety (90)-day notice period. *See Baylor v. Homefix Custom Remodeling Corp.*, 443 F.Supp.3d 598, 609 (D. Md. 2020) ("Ninety days is the 'standard' notice period for potential plaintiffs to opt-in") (cleaned up).

**IV.   THE COURT SHOULD EQUITABLY TOLL THE STATUTE OF LIMITATIONS.**

The FLSA has a two-year statute of limitations that extends to three years when the employer's violations are willful. *See* 29 U.S.C. § 255(a). The statute of limitations, however, is not necessarily tolled when the representative action is filed. Rather, the statute of limitations for each individual's claim only tolls upon the filing of a consent form to join the action. *See* 29 U.S.C. § 256(b); *Schilling v. Schmidt Baking Co.*, Inc., 2018 WL 3520432, at *6 (D. Md. 2018). In other words, collective action members' claims silently erode between the time the plaintiff moves to send notice to the collective and the filing of the respective consent forms.

In *Turner v. Chipotle Mexican Grill, Inc.*, 123 F. Supp. 3d 1300 (D. Colo. 2015), the Court recognized the injustice of a potential plaintiff's claim becoming time barred during the notice period, and to remedy it, ordered equitable tolling. *See Turner*, 123 F.Supp.3d at 1309; *see also Stransky v. HealthONE of Denver, Inc.*, 868 F.Supp.2d 1178 (D. Colo. 2012) ("Equitable tolling is a doctrine that permits courts to extend statutes of limitations on a case-by-case basis in order to prevent inequity."). Plaintiffs move the Court for equitable tolling as of the date Plaintiffs filed this Motion. *Schilling*, 2018 WL 3520432 at 6.

The Court made clear in *Turner* that joinder in FLSA collective actions is "presumptive" and a "lenient" standard—one even more forgiving than joinder under the Federal Rules of Civil Procedure. 123 F.Supp.3d at 1309. Yet briefing on the issue of conditional certification will inevitably cause a delay in notice being sent during the pendency of the briefing period and issuance of this Court's order on the Motion. The collective members should not be punished for the inherent inefficiencies of motions practice; rather, the claims should, as the Court noted in *Turner*, "rise or fall on their merits[.]" *Id*. Accordingly, tolling is appropriate.[7]

## CONCLUSION

Defendants continue to rely on the hard work of its Hourly Employees. They cannot, however, sit back and enjoy the fruits of this labor and at the same time refuse to pay for it. This is the exact unlawful conduct the FLSA was designed to prevent.

For these reasons, Plaintiffs seeks this Court's Order (1) conditionally certifying a collective of all Hourly Employees (regardless of actual title) employed by Defendants at any time

---

[7] The Parties stipulated to the tolling of the statute of limitations for potential opt-in plaintiffs covering the period between April 10, 2025 and May 30, 2025. *See* Doc. 12. Plaintiffs request that the statute of limitations further be tolled from the the date the Motion is filed until the end of the opt-in period.

in the United States during the last three years plus any period of tolling; (2) authorizing Plaintiffs to act as Collective Representatives; (3) authorizing the attorneys of Leventhal Swan Taylor Temming PC and Viruni Law to act as counsel for the collective; (4) directing Defendants to produce the names, mailing addresses, dates of employment, job title, job location, telephone numbers, and e-mail addresses of all putative members of the FLSA collective in an electronically readable format within fourteen (14) days of its order granting this Motion; (5) approving notice to the collective members in the forms and mediums attached as Group Exhibit 7, and allowing collective members ninety (90) days from mailing within which to return an opt-in form; and (6) directing Defendants to prominently post the approved notice in each of its locations within the United States for the duration of the opt-in period.

Respectfully submitted this 9th day of June, 2025.

*/s/ Vincent Z. Viruni*
Vincent Z. Viruni (Maryland Bar No. 20414)
Viruni | Law
137 National Plaza, Suite 300
National Harbor, MD 20745
Phone: (866) 405-1615
Fax: (866) 321-1102
vviruni@virunilaw.com

*/s/ Samuel D. Engelson*
Andrew E. Swan (Colorado Bar No. 46665)
Samuel D. Engelson (Colorado Bar No. 57295)
LEVENTHAL SWAN TAYLOR TEMMING PC
3773 Cherry Creek North Drive, Suite 710
Denver, Colorado 80209
Telephone: (720) 699-3000
Facsimile: (866) 515-8628
Email:         aswan@lstt.law
               sengelson@lstt.law

*Attorneys for Plaintiffs*