UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MARYLAND

*Northern Division*

| | |
|---|---|
| SABRINA LUCERO, an individual, *Pueblo County, CO* <br><br> DONOVAN MCCLURE, an individual, *Pueblo County, CO* <br><br> KARIANE AMPARAN, an individual, *Fremont County, CO* <br><br> on behalf of themselves and those similarly situated <br><br> Plaintiffs, <br><br> - vs. - <br><br> HORIZON LAND MANAGEMENT, LLC, a Maryland limited liability company, *Anne Arundel County, MD* <br> *~and~* <br> RYAN HOTCHKISS, an individual, *Anne Arundel County, MD*, <br><br> Defendants. | **ORAL ARGUMENT REQUESTED** <br><br> Case No.: 1:25-cv-00903- JKB |

DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS'
MOTION FOR CONDITIONAL CERTIFICATION

**NIXON PEABODY LLP**
Jennifer K. Squillario, Esq.
799 9th Street NW, Suite 500
Washington, DC 20001-5327

Christopher J. Stevens, Esq.
Vincent E. Polsinelli, Esq.
677 Broadway, 10th Floor
Albany, New York 12207
Phone: (518) 427-2650

*Attorneys for Defendants*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ................................................................................. 1

RELEVANT BACKGROUND ............................................................................... 3

    A. Horizon's Business .................................................................................. 3

    B. Horizon's Staffing Model ....................................................................... 4

    C. Plaintiffs' Employment ........................................................................... 6

    D. Horizon's Relevant Written Policies ...................................................... 6

    E. Horizon's Timekeeping Practices ........................................................... 7

    F. Plaintiffs' Material Allegations............................................................... 7

    G. Defendants' Documentary Evidence ...................................................... 8

STANDARD OF REVIEW ................................................................................... 8

LEGAL ARGUMENT............................................................................................ 10

I.   PLAINTIFFS HAVE NOT MET THEIR BURDEN OF ESTABLISHING THAT THEY ARE SIMILARLY SITUATED TO THE MEMBERS OF THE PUTATIVE NATIONWIDE COLLECTIVE.................................................................................................... 10

    A. Plaintiffs Fail to Make Even a 'Modest Factual Showing' that All Non-Exempt Employees, Nationwide, Were Subjected to an Unlawful Policy of Practice.................... 10

    B. Plaintiffs' Allegations are Contradicted by Documentary Evidence ................................. 14

II.  CERTIFICATION IS INAPPROPRIATE BECAUSE OF THE MYRIAD INDIVIDUALIZED DETERMINATIONS NECESSARY TO ADJUDICATE PLAINTIFFS' CLAIMS............................................................................................. 18

III. NOTICE, IF ANY, MUST BE NARROWLY TAILORED AND DESIGNED TO ENSURE THAT MEMBERS OF THE PUTATIVE COLLECTIVE CAN MAKE AN INFORMED DECISION ON WHETHER TO PARTICIPATE............................................. 21

IV. PLAINTIFFS' REQUEST FOR EQUITABLE TOLLING SHOULD BE REJECTED. ...... 23

CONCLUSION.................................................................................................... 25

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Cases**

*Bernard v. Household Int'l, Inc.*,
   231 F. Supp. 2d 433 (E.D. Va. Nov. 21, 2002)......................................................9, 11, 12, 13

*Brown v. Rapid Response Delivery, Inc.*,
   2017 WL 55858, at *3 (D. Md. Jan. 4, 2017) ......................................................................21

*Chao v. Virginia Dep't of Transp.*,
   291 F.3d 276 (4th Cir. 2002) ...............................................................................................23

*Chapman v. Saber Healthcare Group, LLC*,
   623 F. Supp. 3d 664 (E.D. Va. Aug. 25, 2022)...........................................................8, 9, 11, 13

*Dimery v. Convergys Corp.*,
   2018 WL 1471892 (D. S.C. Mar. 16, 2018) .........................................................................18

*Dolphus v. Servis One, Inc.*,
   No. CV GLR-16-1075, 2018 WL 11425442 (D. Md. Aug. 3, 2018) ....................................24

*Forkwa v. Symbral Found. For Comm. Servs., Inc.*,
   2012 WL 6727134 (D. Md. Dec. 26, 2012)......................................................................8, 11

*Hallissey v. Am. Online, Inc.*,
   No. 99-CIV-3785, 2008 WL 465112, *4 (S.D.N.Y. 2008) ..................................................22

*Harbourt v. PPE Casino Resorts Maryland, LLC*,
   No. CV CCB-14-3211, 2017 WL 281992 (D. Md. 2017) ....................................................24

*Harris v. Hutchinson*,
   209 F.3d 325 (4th Cir.2000.................................................................................................23

*Hart v. Barbeque Integrated, Inc.*,
   299 F. Supp. 3d 762 (D.S.C. 2017).......................................................................................22

*Hoffmann La Roche v. Sperling*,
   493 U.S. 165 (1989).............................................................................................................8

*Jackson v. American Electronic Warfare Assocs., Inc.*,
   *2023 WL 5154518, at *3 (D. Md. Aug. 10, 2023)*................................................................14

*Johnson v. PHP of NC, Inc.*,
   No. 5:23-CV-462-M, 2024 WL 2237729 (E.D.N.C. 2024)............................................21, 22

*LaFleur v. Dollar Tree Stores, Inc.*,
    No. 2:12–cv–00363, 2012 WL 4739534 (E.D. Va. 2012) .......................................................24

*MacGregor v. Farmers Ins. Exch*,
    No. 2:10-cv-3088, 2011 WL 2981466 (D.S.C. July 22, 2011) ..........................................14, 24

*Owens v. Bethlehem Mines Corp.*,
    630 F. Supp. 309 (S.D.W.V. 1986) ......................................................................................24

*Purdham v. Fairfax Cnty. Pub. Schs.*,
    629 F. Supp. 2d 544 (E.D. Va. 2009) ................................................................................9, 18

*Rivera v. Jet Automotive Servs., LLC*,
    2021 WL 3056224 (D. Md. July 20, 2021) (Bredar, J.) ....................................................9, 21

*Smith v. Smithfield Foods, Inc.*,
    2021 WL 6881062 (E.D. Va. Dec. 21, 2021) .......................................................9, 10, 13, 21

*Stacy v. Jennmar Corp. of Virginia, Inc.*,
    2021 WL 4787278 (W.D. Va. 2021) ....................................................................................22

*Syrja v. Westat, Inc.*,
    756 F. Supp. 2d 682 (D. Md. Nov. 2, 2010) ................................................................ *passim*

*Whitehorn v. Wolfgang's Steakhouse, Inc.*,
    767 F.Supp.2d 445 (S.D.N.Y. 2011) ...................................................................................21

## Statutes

29 U.S.C. § 216(b) ............................................................................................................8

Defendants Horizon Land Management, LLC ("Horizon") and Ryan Hotchkiss ("Mr. Hotchkiss") (collectively, "Defendants") respectfully submit this memorandum of law in opposition to the Motion to Conditionally Certify an FLSA Collective Action filed by Plaintiffs Sabrina Lucero ("Lucero"), Donovan McClure ("McClure"), and Kariane Amparan ("Amparan") (collectively "Plaintiffs") on June 9, 2025 (the "Motion"). *See* Dkt. 23 *et seq.*

## PRELIMINARY STATEMENT

Plaintiffs seek extraordinary relief: conditional certification of a nationwide collective encompassing "[a]ll current and former Hourly Employees (regardless of title) who were employed by Defendants in the United States during the three years preceding the filing of this case." Dkt. 23, at 10. Such an extraordinary request calls for evidence that Plaintiffs are, in fact, similarly situated to the members of the nationwide putative collective that they seek to represent.

The instant motion fails to proffer such evidence. Plaintiffs' proffer consists of only: (1) three nearly identical declarations from the each of the Plaintiffs, all of whom worked exclusively in Colorado; (2) offer letters issued to Lucero and Amparan, which differ materially from one another; (3) a benign instructional video posted to Horizon's YouTube channel; and (4) and a single email by Horizon's former Director of Human Resources to various Regional Managers ("RMs"). This purported 'evidence' falls well short of meeting the applicable standard, even on its face, and the extraordinary relief requested should be denied for this reason alone.

Even if Plaintiffs' evidence was sufficient, which Defendants vehemently dispute, conditional certification should be denied because many of Plaintiffs' material allegations (including their own sworn statements) are contradicted by indisputable documentary evidence.

For example, Plaintiffs allege that Horizon had a national policy or practice of not paying overtime and instead awarding "comp time" that had to be used during the next workweek.

However, Horizon's Employee Handbook (the "Handbook") contains explicit overtime provisions that are lawful on their face and materially contradict Plaintiffs' generalized allegations. What is more, Plaintiffs' own time and pay records indisputably demonstrate that Horizon, in fact, paid them overtime on several different occasions. To be clear, Plaintiffs expressly admit that Horizon paid them overtime compensation beginning in 2024. They also claim, however, that Horizon did not pay its employees overtime compensation until then. Documentary evidence offered by Defendants, together with this opposition, squarely contradicts this conclusory assertion.[1]

Further still, the putative nationwide collective sought by Plaintiffs is exceedingly overbroad in several ways and should therefore not be conditionally certified as proposed. First, Plaintiffs seek to group together Community Managers ("CMs"), Assistant Community Managers ("ACMs"), and Maintenance Technicians ("MTs") even though their respective job duties and other important aspects of each position vary materially by property, supervisor, and time period. Certifying such a disparate group would undermine manageability, invite a wave of individualized mini-trials, and frustrate—rather than promote—efficient case management.

Furthermore, Plaintiffs seek certification of a nationwide collective even though all three Plaintiffs worked exclusively in Colorado. Plaintiffs simply do not, and cannot, have personal knowledge of Horizon's nationwide policies and practices sufficient to justify an inference that any purportedly unlawful practices—even if they existed—were applied outside of the properties that Plaintiffs serviced in Colorado. In fact, the evidence establishes that Plaintiffs are not similarly situated even to one another, or to other members of the putative collective who worked in

---

[1] In response, Plaintiffs may attempt to argue that *they* did not get paid overtime compensation until some time in 2024, despite their allegation that they purportedly worked more than 40 hours in some workweeks—an allegation that Defendants deny. Notwithstanding the veracity of Plaintiffs' allegations, the fact that other employees were paid overtime compensation during the period when Plaintiffs claim that they, personally, were not clearly shows that they are not similarly situated to Horizon's other employees in Colorado (not to mention throughout the rest of the country).

Colorado.  As such, there is no plausible basis whatsoever to infer that Plaintiffs are similarly situated to all other non-exempt employees, nationwide.

Moreover, Plaintiffs seek a three-year lookback period without even plausibly alleging (let alone establishing) any "willful violation" of the FLSA, which of course is required to extend the standard two-year limitations period.  Nor do they identify any "extraordinary circumstance" that warrants equitable tolling.

In summary, conditional certification should be denied outright because Plaintiffs have not made even the modest showing required to obtain conditional certification.  Anecdotal accounts from three Colorado employees who worked at a few Horizon properties in that single state do not support an inference of an unlawful practice that was applied uniformly, nationwide.  That is especially so where, as here, the record flatly contradicts Plaintiffs' material claims relating to any alleged policy or practice and leaves little room for doubt that the claims asserted turn on individualized facts specific to each employee, location, and supervisor.

Alternatively, to the extent that any putative collective is conditionally certified, its scope must be limited to a two-year period and confined to the specific locations where Plaintiffs worked.

## RELEVANT BACKGROUND

### A. Horizon's Business

Horizon, headquartered in Crofton, Maryland, is a privately held property management company founded in 2012.  *See* Declaration of Kate Costello ("Costello Dec."), ¶ 3.  Horizon's core business consists of operating high quality Manufactured Home Communities ("MHCs").  Costello Dec., ¶ 3.

Horizon operates MHC's more than 150 MHC's across 19 different states; including 7 MHCs in Colorado.  *Id.*, ¶ 4.

3

**B.** **Horizon's Staffing Model**

Horizon generally employs three types of employees at its MHCs: a CM, an ACM, and one or more MTs. *Id.*, ¶ 5. These various positions are governed by different wages scales, schedules, and reporting hierarchies. *Id.*, ¶ 16. As described in further detail below, each position's duties are also tailored to the unique operational and maintenance needs of the specific property at which they are performed.

Generally speaking, CMs are responsible for managing the property to which they are assigned and supervising the other Horizon employees who work there. *Id.*, ¶ 6. Their specific job duties include leasing vacant spaces, collecting rents, handling tenant inquiries/disputes, and more. *Id.* ACMs are generally responsible for assisting the CM as needed and often serve as the *de facto* CM when the CM is not present on the property. *Id*, ¶ 7.

Some CMs, and some ACMs, are responsible for only one MHC while others are assigned to multiple MHCs. *See* Decelaration of Amy Thorne ("Thorne Dec."), ¶ 6. In some instances, CMs and/or ACMs are residents of the communities. Costello Dec., ¶ 14. In other instances, they reside independently elsewhere. *Id.* Some CMs are full-time and work approximately 40 hours per week, while others are part-time and work approximately 29 hours per week (or less). Thorne Dec., ¶ 6.

MTs are responsible for performing various maintenance tasks including, but not limited to, general property upkeep. Costello Dec., ¶ 8. They may be assigned to one MHC or multiple MHCs, depending largely on the sizes and proximity of the MHCs in their geographic location. *See id.*, ¶ 14. As a result, some MTs may travel for work often, while others may travel very little (or not at all).

4

There are also several Regional Managers ("RMs"), each of whom oversees multiple properties in their respective regions.[2]  *Id.*, ¶ 9.  Amy Thorne was the RM responsible for the Colorado Region during the bulk of Plaintiffs' employment with Horizon.  *See* Thorne Dec., ¶¶ 1-3.

Horizon, like most fast-growing and relatively new companies, operates pursuant to a highly decentralized staffing model.  Costello Dec., ¶ 10.  Horizon has assumed management responsibility of many MHCs in recent years, and each one comes with its own history, past practices, and legacy employees (many of whom Horizon kept on board after assuming management).  *Id.,* ¶.  As such, the various MHCs that Horizon operates necessarily have varying natures, histories, and needs.  *See id.*

Each MHC is staffed accordingly.  For example, staffing varies depending on the size and nature of the MHC, among other factors.  *Id.*, ¶ 12.  For example, Horizon operates some large communities which are staffed by a CM, an ACM, and several MTs.  *Id.*; *see also* Thorne Dec., ¶ 10.  On the other hand, Horizon also operates several smaller communities which are staffed by a CM, sometimes an ACM, and just one or two MTs.  Costello Dec., ¶ 12.  Still others are staffed only by a part-time CM and may not have any permanently assigned MT, and some may not even be maintained by Horizon employee(s).  *See id.*, ¶ 15.  Indeed, the maintenance function at some Horizon MHCs are performed primarily by third-party service providers contracted by Horizon. *Id.*

Larger communities, or communities located in areas that tend to experience inclement weather, are more likely to require additional staffing and/or to incur overtime; particularly for

---

[2] RMs and the rest of Horizon's core operations team are exempt, salaried employes and are not members of the putative collective and/or class.

MTs.  *Id.*, ¶ 13.  One the other hand, smaller communities and/or communities which tend to experience more stable weather rarely (if ever) incur overtime from any position.  *Id.*

**C.  Plaintiffs' Employment**

Horizon originally hired Lucero as an ACM, splitting time between the MHC's located at Pueblo Pointe and Canon City, Colorado, in March 2022.  *See* Dkt. 23-1, Declaration of Sabrina Lucero ("Lucero Dec."), ¶ 2.  Shortly thereafter, in June 2022, Lucero was promoted to CM of Horizon's Pueblo Pointe MHC.  *See id.*  Lucero remained in that role through the end of her employment with Horizon in or around February 2025.  *See id.*

Amparan was hired in June 2022 as the CM of Horizon's Canon City, Colorado MHC—in conjunction with Lucero's promotion to CM of the Pueblo Pointe MHC.  *See* Dkt 23-1, Declaration of Karianne Amparan ("Amparan Dec."), ¶ 2.  Amparan remains in that role to this day.  *Id.*

McClure worked for Horizon, exclusively as an MT, from January 2023 through February 2025 when he voluntarily resigned.  *See* Dkt. 23-1, Declaration of Donovan McClure ("McClure Dec."), ¶ 1.  He was assigned primarily to the Pueblo Pointe MHC but performed work at several different Horizon-managed MHCs, all of which were in Colorado.  *See id.*

**D.  Horizon's Relevant Written Policies**

Horizon has a clear overtime policy, contained in the Handbook, which provides as follows: "Any Non-Exempt Employee who works overtime will be compensated at the rate of one-and-one-half times (1.5) the employee's normal hourly wage for all time worked in excess of forty (40) hours each week, unless otherwise required by law."  Costello Dec., ¶ 17, Ex. A.

The Handbook also prohibits "working off the clock," and expressly requires all non-exempt employees to "record their actual time worked." *Id.*, ¶ 18, Ex. B.  The relevant policy states

that Horizon may impose discipline, up to an including termination, for any alteration or falsification of time records.  *See id.*

### E.  <u>Horizon's Timekeeping Practices</u>

Prior to January 2024, Horizon required employees to report their time worked via the internet or a mobile application provided by Horizon's third-party payroll provider.  *Id.*, ¶ 19. Pursuant to its lawful timekeeping policy, referenced above, Horizon employees have long been expected to accurately report their time worked and are prohibited from working "off the clock." *See id.*

In November 2023, Horizon announced updates to its timekeeping practices.  *Id.*, ¶ 20. Specifically, Horizon implemented a practice that required all non-exempt employees to manually complete weekly timesheets reflecting all hours worked.  *Id.*  This policy went into effect beginning in or around January 2024.  *Id.*  From that point forward, each week, every non-exempt employee completed a weekly timesheet and submitted it for approval.  *Id.*

Notably, the relevant Handbook policies discussed above (including the overtime policy and the policy prohibiting 'off-the-clock' work) were not impacted by this change.  *Id.*

### F.  <u>Plaintiffs' Material Allegations</u>

The portion of the Complaint that purports to be asserted as a collective action under the FLSA can be boiled down to a single claim—that Horizon allegedly failed to pay Plaintiffs (and those purported to be similarly situated) overtime when they worked over 40 hours in each workweek.  Plaintiffs allege that Horizon did not pay them overtime at all, offering "comp" time instead, at least prior to November 2023.  However, Plaintiffs readily concede that Horizon paid them overtime during some portion of their employment.  McClure Dec., ¶ 11; Dkt. 23-1 ("Lucero Dec."), ¶ 11; Dkt. 23-1 ("Amparan Dec."), ¶ 11.  Nonetheless, Plaintiffs allege that even the

overtime indisputably paid was not sufficient to capture all the time they now claim to have worked.  Specifically, Plaintiffs allege that they were instructed to suppress/underreport their overtime by their particular manager(s).  *See id.*, ¶ 8.

### G. Defendants' Documentary Evidence

Together with this Memorandum, Defendants provide documentary evidence which establishes that Horizon codified and published entirely lawful policies.  *See* Costello Dec., ¶¶ 17-18, Exs. A-B.  What is more, Defendants offer evidence conclusively establishing that Plaintiffs were in fact paid overtime; and that other non-exempt employee(s) in Colorado, the only state in which Plaintiffs worked, were paid overtime both before and after implementation of the updated timekeeping practices discussed above.  *See* Thorne Dec., ¶¶ 13-20, Exs. B-F.

## STANDARD OF REVIEW

To bring a collective action, Plaintiffs must establish that they are "similarly situated" to the members of the putative collective whom they seek to represent.  *See* 29 U.S.C. § 216(b); *Hoffmann La Roche v. Sperling*, 493 U.S. 165, 170 (1989).  "The FLSA does not define 'similarly situated,' and the Fourth Circuit has yet to adopt a precise definition of the term."  *Chapman v. Saber Healthcare Group, LLC*, 623 F. Supp. 3d 664, 672 (E.D. Va. Aug. 25, 2022).  District courts in this Circuit, however, "have consistently employed a two-step process to determine whether potential plaintiffs are similarly situated."  *Id.*

At the first stage, known as conditional certification, "the court must decide whether to facilitate the opt-in process by conditionally certifying the collective and authorizing notice of the suit to potential plaintiffs."  *Id.*  The "touchstone" at this stage "is whether Plaintiffs have demonstrated that potential [collective] members are similarly situated."  *Forkwa v. Symbral Found. For Comm. Servs., Inc.*, 2012 WL 6727134, at *2 (D. Md. Dec. 26, 2012).  Largely because

there is "ordinarily limited discovery at this stage, plaintiffs seeking conditional certification need only make a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Chapman*, 623 F. Supp. 3d at 672 (internal quotations omitted).

Although the standard applied at stage one is relatively lenient, it is not simply a "formality." *Id.* "Mere allegations will not suffice; some factual showing evidence is necessary." *Bernard v. Household Int'l, Inc.*, 231 F. Supp. 2d 433, 435 (E.D. Va. Nov. 21, 2002). Plaintiffs have the burden and, to meet it, they must "show that the presence of common issues allows the class-wide claims to be addressed without becoming bogged down by individual differences among class members." *Chapman*, 623 F. Supp. 3d at 672 (internal quotation omitted).

If Plaintiffs have met this burden, conditional certification may be granted and notice may then be sent to members of the putative collective. The case would then enter the second stage, known as decertification. Discovery would be exchanged and, at or near its completion, Defendants will move for decertification of any conditionally certified collective.

If, on the other hand, Plaintiffs have not met their burden, "the Court need not force this case into a two-stage procrustean bed but can instead 'collapse the two stages of the analysis and deny certification outright,' even where a motion seeks conditional certification." *Rivera v. Jet Automotive Servs.*, 2021 WL 3056224, at *1 (D. Md. July 20, 2021) (Bredar, J.) (quoting *Purdham v. Fairfax Cnty. Pub. Schs.,* 629 F. Supp. 2d 544, 547 (E.D. Va. 2009)).

"Determinations of the appropriateness of conditional collective action certification and court-facilitated notice are left to the court's discretion." *Syrja v. Westat, Inc.*, 756 F. Supp. 2d 682, 686 (D. Md. Nov. 2, 2010). Courts in this Circuit exercise their discretion to issue notice, which is "not unfettered," judiciously. *Smith v. Smithfield Foods, Inc.*, 2021 WL 6881062, at *16

(E.D. Va. Dec. 21, 2021) (quoting *Purdham*, 629 F. Supp. 2d at 547).  Precedent teaches that conditional certification should be granted only when "it would serve judicial efficiency," and that "the court must be mindful that granting conditional certification expands the scope of the litigation and begins a process of class-wide discovery."  *Id.* (internal quotation omitted).

## **LEGAL ARGUMENT**

I.    **PLAINTIFFS HAVE NOT MET THEIR BURDEN OF ESTABLISHING THAT THEY ARE SIMILARLY SITUATED TO THE MEMBERS OF THE PUTATIVE NATIONWIDE COLLECTIVE.**

Plaintiffs appear to confuse the relatively lenient standard applicable at this stage with no standard at all. Indeed, Plaintiffs voluntarily elected to forego any discovery prior to making the Motion and rely almost exclusively on their own self-serving declarations—all of which come from current or former employees employed only in Colorado—to support their request for conditional certification of a nationwide collective.  The Motion, appearing to assume that conditional certification is a given, neglects to account for both the Plaintiffs' meaningful burden for obtaining conditional certification of a nationwide collective and the Court's considerable discretion in considering whether such relief should be granted.

A.  **Plaintiffs Fail to Make Even a 'Modest Factual Showing' that All Non-Exempt Employees, Nationwide, Were Subjected to an Unlawful Policy of Practice.**

Critically, "[c]ertification of a nationwide class is rare.  Courts are generally more inclined to certify classes across a single state or region." *Smith*, 2021 WL 6881062, at *9. If a nationwide collective is to be certified, Plaintiffs must demonstrate "personal knowledge that the policies extend to other facilities." *Id.* at 10.

Plaintiffs have not done so here. Instead, they have merely claimed, in conclusory fashion, that they have "personal knowledge about Defendants' Comp Time policy and nationwide implementation." *See* McClure Dec., ¶ 12; Lucero Dec., ¶ 12; Amparan Dec., ¶ 12.  But this

alleged "personal knowledge" lacks any foundation.  It rests almost entirely upon "an instructional video" uploaded to Horizon's YouTube channel and a single benign e-mail which none of the Plaintiffs were included on.  *See* Dkt. 23-3.

The law is clear in this Circuit: "[w]hen declarations come exclusively from a small, geographically homogenous group of declarants, conditional certification of a nationwide collective is inappropriate if the declarants lack personal knowledge about the policies or practices at other [locations]."  *Chapman*, 623 F. Supp. 3d at 676 (collecting cases).  Courts in this Circuit have previously denied, or substantially limited, conditional certification where, as here, Plaintiffs "simply state that they have personal knowledge that . . . [Defendant] did not pay other employees overtime" but "do not state the factual basis for the essential legal conclusion that [Defendant] failed to pay its employees . . . overtime." *Forkwa*, 2012 WL 6727134, at *2; *see also Syrja*, 756 F. Supp. 2d at 687-88 (denying conditional certification because "aside from [their] own assertions and those of members of the putative class, [Plaintiffs] ha[ve] offered no evidence that even begins to suggest that [Defendant] currently maintains, or that it ever maintained, a uniform national policy of denying appropriate compensation for employee hours worked over 40 in a given week.").

*Bernard v. Household International, Inc.* is instructive in this regard.  *See* 231 F. Supp. 2d at 435-36.  In that case, the plaintiff sought conditional certification of a putative collective spanning several offices across 15 different states.  In support of that request, the plaintiff submitted declarations alleging that the defendant had a company-wide practice of failing to pay overtime together with certain policy documents purporting to support that allegation. *See id.* That evidence included an incentive plan, which the plaintiff contended incentivized managers to encourage the unlawful practice(s) alleged.  *See id.*

The court refused to certify a company-wide collective, holding that the evidence offered by the plaintiff "is insufficient to support allegations that defendant has a company-wide policy resulting in potential FLSA violations." *Id.* at 435. Despite holding that the evidence was sufficient to justify certification of a collective consisting of employees at two locations, the court also held that "it is not sufficient to warrant further extension of the class." *Id.* In so holding, the court reasoned that the plaintiff's allegations relating to alleged practices at other offices were not supported by personal knowledge. *Id.* at 436. "[S]pecific allegations regarding practices in other offices" was conspicuously absent; causing the court to conclude that there is "no indication that the problems alleged through first-hand knowledge in the two Virginia offices exist elsewhere." *Id.* Addressing the incentive plan specifically, the court held that "the plan does not on its face encourage . . . inappropriate behavior. Rather, the alleged actions rest on the interpretations of the plan by individual supervisors and managers." *Id.* at 435.

The same is true here. Plaintiffs' declarations purporting to attest to the fact that they have personal knowledge about how non-exempt employees outside of Colorado were treated are impermissibly vague and conclusory. In fact, the evidence presented here amounts to even less than what was presented in prior cases wherein conditional certification was denied. The only other "scintilla of evidence of a company-wide policy" (*id.* at 436) provided by Plaintiffs is their allegation (again made, identically, in the same paragraph of each declaration) that "Defendants' Senior Regional Manager and other corporate employees (*i.e.*, Sarah Winters and Amy Thorne)" purportedly instructed Plaintiffs "not to record hours worked over 40 in a work week." McClure Dec., ¶ 8, Lucero Dec., ¶ 8, Amparan Dec., ¶ 8.

Even assuming these allegations to be true, which Defendants do not concede, all they reveal is that the interpretation and application of Horizon's facially lawful policies rested "on the

interpretations of the plan by individual supervisors and managers." *Bernard*, 231 F. Supp. 2d at 435. This weighs strongly against the certification of the broad nationwide collective pursued by Plaintiffs here. *See id.*; *accord Smith*, 2021 WL 6881062, at *10 (denying conditional certification of a broad putative collective because Plaintiffs failed to demonstrate firsthand knowledge of company practices at any facilities other than those at which they were employed).

Just as Plaintiffs do not identify any other employees whom they allege were subjected to the same allegedly unlawful policies/practices, Plaintiffs also fail to identify any other RMs who supposedly applied the alleged policies/practices in a purportedly unlawful way. Their vague, conclusory, assertions that they "discussed overtime compensation" with other unidentified employees and have "personal knowledge" of nationwide policies or practices simply do not suffice to justify certification of a nationwide collective. *See Smith*, 2021 WL 6881062, at *6–7 (holding that declarations which were "internally inconsistent and virtually identical" were insufficient to justify conditional certification of a putative nationwide collective); *see also Bernard*, 231 F. Supp. 2d. at 436 (denying conditional certification of a nationwide collective in part because Plaintiffs failed to make "specific allegations regarding practices in other offices ... .").

This purported 'evidence' is no less persuasive than Plaintiffs' conclusory assertions that they have personal knowledge of an unlawful policy or practice that was applied nationwide and also falls well short of justifying certification of a nationwide collective. Again, the law in this Circuit is clear: "[a]s a general matter, 'when alleged FLSA violations stem from the enforcement decisions of individual supervisors, without a company-wide policy or plan directing those enforcement decisions, collective treatment is not appropriate.'" *Chapman*, 623 F. Supp. 3d at

674 (quoting *MacGregor v. Farmers Ins. Exch*, No. 2:10-cv-3088, 2011 WL 2981466, at *3 (D.S.C. July 22, 2011)).

Case law cited by Plaintiffs on this point is readily distinguishable.  In *Jackson v. American Electronic Warfare Assocs., Inc.*, for example, the plaintiff "submitted several exhibits providing factual support for his allegations, including letters detailing his hourly rate in various years; invoices to [] clients listing overtime hours worked by [the plaintiff]; pay records showing that [the plaintiff] was not paid at the overtime rate for hours exceeding 40 hours per week . . .; a declaration in which [the plaintiff] asserts that . . . he was aware that other [] employees were subjected to [the allegedly unlawful practice]; and documentation showing a list of [] employees who were [subjected to the allegedly unlawful practice]."  2023 WL 5154518, at *3 (D. Md. Aug. 10, 2023). Here, by contrast, Plaintiffs rely almost exclusively on their own declarations and have not come close to making the much more substantial showing deemed sufficient in *Jackson*.

As the foregoing makes clear, Plaintiffs have failed to meet their burden of establishing that they are similarly situated to the members of the putative nationwide collective that they purport to represent.  Plaintiffs have not established that they have personal knowledge, or even a plausible basis to conclude that they could have personal knowledge, of an unlawful policy or practice that was applied nationwide.

**B.  Plaintiffs' Allegations are Contradicted by Documentary Evidence.**

Even assuming that Plaintiffs' allegations were sufficient on their face to conditionally certify a nationwide collective, the Motion should still be denied because Plaintiffs' allegations are contradicted by indisputable documentary evidence.  Indeed, courts in this District have denied conditional certification where, as here, the evidence available suggests that notice would not be appropriate. *See Syrja*, 756 F. Supp. 2d at 687-88.  For example, in *Syrja*, the court denied

14

conditional certification after observing that "the only concrete evidence before the Court relevant to a national policy with respect to overtime pay is [the defendant's] official policy to the effect that it will compensate its employees for all overtime hours worked, even when such hours are unauthorized." *Id.* at 688.

The same is true here.  It is indisputable that Horizon has (and has at all relevant times had) a clear written policy providing that overtime would be paid at a rate of time and a half, even if it was unauthorized.  Costello Dec., ¶ 17, Ex. A.  It is similarly undisputed that Horizon paid Plaintiffs overtime during the course of their respective employment.  McClure Dec., ¶ 11, Lucero Dec., ¶ 11, Amparan Dec., ¶ 11.

What is more, even the evidence submitted by Plaintiffs themselves reveals that they are not even similarly situated to one another; much less the members of the putative nationwide collective.  For example, an offer letter to Lucero references "compensatory time for hours worked over 40 in a workweek" and states that "non-exempt employees are not permitted to work overtime." Dkt. 23-2, at 1.  On the other hand, an offer letter to Amparan states that she is "eligible for overtime pay or compensatory time for hours worked over 40 in a workweek" and that non-exempt employees "are not permitted to work overtime unless approved by the employee's Supervisor in advance." *Id.* at 5.

In fact, the evidence that the notice would be inappropriate is even more compelling here than it was in *Syrja*. In addition to Horizon's clear policy authorizing the payment of overtime, Horizon also has submitted payroll records demonstrating that other Colorado employees to whom Plaintiffs purport to be similarly situated were, in fact, paid overtime on multiple occasions—even *before* the change to Horizon's timekeeping procedures. *See* Thorne Dec., ¶ 19, Ex. G.

Further still, Plaintiffs' respective declarations make it clear that they worked at a varying number of properties, performed different duties, and worked different hours. McClure claims to have worked on at least four MHCs. McClure Dec., ¶ 2. Lucero claims to have worked at two different sites. Lucero Dec., ¶ 2. Amparan only claims to have worked at one site. Amparan Dec., ¶ 2.

All held different titles and performed the materially distinct responsibilities associated with their respective roles. McClure was an MT. McClure Dec., ¶ 2. Lucero split her time as an ACM at Horizon's Canon City and Pueblo Pointe MHCs[3] before assuming a full-time role as CM of the Pueblo Pointe MHC. Lucero Dec., ¶ 2. Amparan was (and remains) the CM of the Canon City MHC. Amparan Dec., ¶ 2.

Further still, McClure and Lucero claim to have "regularly worked at least 50 hours per week." McClure alleges that his overtime work consisted of conducting "emergency and his priority maintenance/repair tasks," (McClure Dec., ¶ 6) but does not indicate which properties he was purportedly servicing when he purportedly worked overtime. Lucero does not bother to specify why she purportedly worked overtime or at which MHCs, aside from noting that she "regularly worked at Defendants' community sites overnight and in the early mornings." Lucero Dec., ¶ 6. Significantly, these self-serving statements are directly contradicted be timesheets that Lucero herself completed, signed, and submitted to Horizon. *See* Thorne Dec., ¶¶ 15-17, Exs. A-D.

---

[3] Notably, Plaintiff Lucero does not specifically allege in her Declaration that she worked more than 40 hours in any particular workweek during her brief period as an ACM. Indeed, she simply alleges in conclusory fashion that she "regularly worked at least 50 hours per week" without specifically identifying any particular workweeks or locations when she purportedly worked such hours. Such conclusory allegations—particularly with respect to her brief three-month period as an ACM at the very beginning of her employment—are patently insufficient to demonstrate that she is similarly situated to any other ACMs working for Horizon in Colorado (or anywhere else). And Plaintiffs offer no other evidence concerning the hours allegedly worked by any other ACM.

Amparan, on the other hand, claims that she works "five or six days each week" and that her shifts "last ten or more hours each day."  Amparan Dec., ¶ 5.  However, Amparan goes on to attest that she "regularly work[s] 42 hours per week."  *Id.*  Of course, both can't be true.  This is especially so since Amparan worked (and continues to work) at only one MHC (Canon City) which rarely, if ever, requires overtime in light of its size, nature and other factors.  *See* Thorne Dec., ¶¶ 10-12.

In sum, it is undisputed that Horizon did in fact pay Plaintiffs overtime (at the appropriate rate) for at least a portion of the relevant time; and indisputable that other Colorado employees were paid overtime during the very period in which Plaintiffs claim that they were not (i.e., prior to 2024). *See, e.g.*, Thorne Dec., ¶¶ 13-20, Exs. A-H.  As such, it strains credulity that Plaintiffs continue to seek certification of nationwide collective consisting of all non-exempt positions at Horizon and covering the entire three-year period preceding the filing of this lawsuit.

Perhaps in tacit acknowledgment of the fact that the Plaintiffs' admission that they were paid overtime during the course of their employment dooms conditional certification of a collective consisting of all non-exempt employees nationwide employed by Horizon in the three years preceding the filing of the Complaint, Plaintiffs allege (in entirely conclusory fashion) that they worked additional overtime hours—beyond what they themselves reported—even after Horizon was indisputably compensating them for overtime.  *See* McClure Dec., ¶ 11; Lucero Dec., ¶11, Amparan Dec., ¶ 11.  This attempted perry is ineffective for several reasons.

As a threshold matter, given Horizon's written policies and Plaintiffs' admissions that Horizon did in fact pay them overtime from at least 2024 forward, there is no basis for an inference that Horizon would have limited the amount of overtime that *Plaintiffs themselves* reported.  What is more, the Plaintiffs' claim that they (and all other non-exempt employees, nationwide)

purportedly worked 'off-the-clock' (against Horizon policy) underscores the individualized nature of the claims at issue. Resolution of such claims would, inevitably, require workweek-by-workweek determinations of, among other things: whether an employee worked overtime; whether an employee accurately reported that overtime; whether an employee was fully compensated for the overtime reported; whether a particular supervisor instructed an employee to underreport their overtime; whether a particular supervisor altered an employee's timesheet as submitted prior to approving it for payroll; whether any overtime was offset by paid meal periods in a given workweek, and more.

## II.   CERTIFICATION IS INAPPROPRIATE BECAUSE OF THE MYRIAD INDIVIDUALIZED DETERMINATIONS NECESSARY TO ADJUDICATE PLAINTIFFS' CLAIMS.

As foreshadowed above, even if Plaintiffs' allegations were sufficient to justify conditional certification, the Motion should still be denied because it is inevitable that resolution of Plaintiffs' claims will necessarily require a plethora of individualized determinations. *See generally Dimery v. Convergys Corp.*, 2018 WL 1471892, at *10 (D. S.C. Mar. 16, 2018) ("Even were this Court to agree that Plaintiff has established a common scheme or policy that violates the law, in order to resolve each claim, an individualized determination would be necessary . . . Accordingly, this Court denies Plaintiffs' motion to conditionally certify the suggested proposed collective FLSA class."). "[A] court may determine that conditional certification is inappropriate where multiple claims cannot be adjudicated efficiently because they would require 'substantial individualized determinations for each class member.'" *Syrja,* 756 F. Supp. 2d at 686 (quoting *Purdham*, 629 F. Supp. 2d at 549). This is precisely such a case.

This conclusion is inescapable even if the focus is placed solely on the evidence submitted by Plaintiffs themselves. For example, Lucero and McClure claim that they "regularly worked at

18

least 50 hours per week." McClure Dec., ¶ 5, Lucero Dec., ¶ 5. Amparan, on the other hand, claims that she "regularly worked 42 hours per week." Amparan Dec., ¶ 5.

This is not a distinction without a difference, particularly considering Horizon's paid meal break policy. *See* Thorne Dec., ¶ 27. In Colorado, where all three Plaintiffs worked, employees are permitted to take a 30-minute meal break. *Id*. Although not required by law, Horizon has consistently paid for these breaks. *Id*. As such, in any typical five-day workweek during which a Colorado employee alleges that they worked 42 hours (as Plaintiff Amparan alleges here), assuming that the employee took a paid meal break each day as permitted, they would have been paid for 2.5 hours per week (0.5 hours per day x 5 days) of non-compensable meal break time. In this scenario, not only would the employee not have worked any overtime, but they would have actually been *overpaid* during each of those weeks by 30 minutes.[4] *See* Thorne Dec., ¶ 28. In other words, even assuming that a Colorado employee regularly worked 42 hours per week (as Plaintiff Amparan alleges), *they would not have worked any compensable overtime* unless they make the somewhat dubious claim that they worked through all (or at least some) of their meal breaks—which would necessitate a day-by-day, individualized inquiry.

These individualized inquiries are further complicated by the fact that Horizon employees, including Plaintiffs, largely worked independently. *See* Thorne Dec., ¶ 22. Very few, if any, are directly supervised by RMs or other corporate management—whom are located off-site. *See id*. Horizon, therefore, necessarily relied upon Plaintiffs to accurately report their time. *Id*. When overtime was reported, it was paid. Of course, Horizon could not have known overtime was worked if it was not reported. What is more, in any event, whether overtime was worked, reported,

---

[4] Again, even if Plaintiff Amparan now makes the allegation that she never took a meal or lunch break, that would create yet another individualized inquiry that would be required to be conducted for every employee in Colorado.

altered, approved, or paid necessarily involves myriad individualized determinations that are not suitable for resolution on a collective-wide basis. *See Syrja,* 756 F. Supp. 2d at 686.

Further still, there is a process for capturing time worked outside of the reporting hours made necessary by the Company's payroll systems and procedures. *See* Thorne Dec., ¶¶ 12, 26. As is apparent from the face of Horizon's timesheets, which were completed and signed by each non-exempt employee since at least January 2024, hours worked after 12:00pm on Friday during the preceding workweek were to be logged by the employee(s) who worked them. *See e.g.*, *id.* ¶ 17, Ex. B-C. When such hours were appropriately logged, they were appropriately compensated. *See id.*

As the foregoing reveals, numerous individualized inquiries will inevitably be necessary to adjudicate Plaintiffs' claims. These include, but are not limited to:

- Whether each individual worked at one, or more, sites; and the size and nature of each site at which an individual worked;

- Whether each individual worked compensable overtime in a given workweek (an inquiry which, as described above, will be further complicated by whether or not each individual took a meal break and/or was paid for that meal break);

- Whether Horizon paid each individual, in full, for all overtime hours worked;

- Whether any supervisor instructed individuals not to record hours worked over 40 in a given workweek (contrary to Horizon's written policy);

- Whether each non-exempt employee accurately reported their own time on their timesheet for each workweek; and

- Whether any supervisor altered timesheets or otherwise altered the time submitted by each individual.

As a result, any alleged FLSA violations "are plaintiff-specific and not subject to collective proof." *Rivera v. Jet Automotive Servs., LLC*, 2021 WL 3056224, at *3 (D. Md. July 20, 2021) (Bredar, J.). Instead, "adjudicating the individualized disputes each worker has with Defendants' pay [records] would require 'substantial individualized determinations for each class member.'" *Id.* (quoting *Brown v. Rapid Response Delivery, Inc.*, 2017 WL 55858, at *3 (D. Md. Jan. 4, 2017)).

Therefore, "[b]ecause discovery using Plaintiffs' proposed nationwide class would be broad and burdensome, and a trial of the putative class unmanageable, concerns of both fairness and juridical economy weigh against" granting conditional certification in this case. *Smith*, 2021 WL 6881062, at *16. Conditional certification should be denied for this added reason.

### III.   NOTICE, IF ANY, MUST BE NARROWLY TAILORED AND DESIGNED TO ENSURE THAT MEMBERS OF THE PUTATIVE COLLECTIVE CAN MAKE AN INFORMED DECISION ON WHETHER TO PARTICIPATE.

Defendants submit that conditional certification should be denied, and that notice should therefore not be issued (or, alternatively, should only be issued to a much smaller group than the putative nationwide collective proposed by Plaintiffs). Should any form of notice be issued, however, it must be narrow and just. Much like the putative collective itself, Plaintiffs' proposed notice is overreaching in several ways. Defendants therefore submit that notice, if any, should be modified as described below.

First, Plaintiffs' proposed notice highlights the potential benefits of electing to opt-in but makes no mention of the resulting obligations that may ensue. Potential plaintiffs have a right to be fully informed of the potential consequences of their decision. Modification is therefore necessary to advise potential opt-in plaintiffs that, should they opt-in, they may be subject to written discovery, deposition, and/or cross-examination at trial. *See Johnson v. PHP of NC, Inc.*,

No. 5:23-CV-462-M, 2024 WL 2237729, at *12 (E.D.N.C. 2024) (citing *Hallissey v. Am. Online, Inc.*, No. 99-CIV-3785, 2008 WL 465112, *4 (S.D.N.Y. 2008)).

Second, Plaintiffs' proposal that any notice issued be provided via four different mechanisms (regular mail, email, text message, and posting) is vastly overbroad.  There is no evidence, and Plaintiffs do not argue, that sending notice via U.S. Mail would be ineffective to apprise potential opt-ins of their rights.  The numerous alternative methods proposed by Plaintiffs would therefore be "invasive and duplicative."  *See, e.g.*, *Stacy v. Jennmar Corp. of Virginia, Inc.,* 2021 WL 4787278, at *4 (W.D. Va. 2021) ("[T]he best and most appropriate form of notice is through U.S. mail. I agree with defendants that sending notice via email, text message or phone call, and posting notices at the defendants' workplace . . . would be too invasive and duplicative, and the plaintiffs have not demonstrated at this time that the mailing of notices would be ineffective.").

Third, Plaintiffs' requests for the telephone numbers, dates of birth, and email addresses of the members of any putative collective that may be conditionally certified is similarly overreaching.  As a threshold matter, it is difficult to discern how dates of birth could possibly be relevant.  What is more, telephone numbers and email addresses are unnecessary for the reasons discussed above.  *See, e.g.*, *Hart v. Barbeque Integrated, Inc.*, 299 F. Supp. 3d 762, 772 (D.S.C. 2017) ("[D]istrict courts in this circuit have required a showing of a 'special need' before requiring the disclosure of telephone numbers.").

Defendants reiterate that conditional certification should be denied, and that notice therefore need not be issued.  If, however, a collective is conditionally certified in any form substantial modifications to Plaintiffs' proposed notice will be necessary to ensure that potential opt-ins are fully and fairly informed.  Defendants respectfully submit that, in the event that any

collective is conditionally certified, the parties should be given 14 days to meet-and-confer regarding the terms of any notice to be issued.

## IV.   PLAINTIFFS' REQUEST FOR EQUITABLE TOLLING SHOULD BE REJECTED.

"Any invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes." *Chao v. Virginia Dep't of Transp.*, 291 F.3d 276, 283 (4th Cir. 2002) (citing *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000)). The Fourth Circuit has consistently held that the "circumstances under which equitable tolling has been permitted are therefore quite narrow." *Chao*, 291 F.3d at 283. Thus, equitable tolling has been found appropriate in the following circumstances:

> (1) where claimant has actively pursued his judicial remedies by filing defective pleading during statutory period, (2) where complainant has been induced or tricked by his adversary's misconduct into allowing filing deadline to pass, (3) when extraordinary circumstances beyond plaintiff's control made it impossible to file claims on time.

*Id.*

Here, Plaintiffs ask the Court to equitably toll the statute of limitations, arguing that "briefing on the issue of conditional certification will inevitably cause a delay in notice being sent during the pendency of the briefing period and issuance of this Court's order on the Motion." (Motion, p. 12). However, Plaintiffs' Motion fails to allege that their current situation presents any of the narrow circumstances where the Fourth Circuit has granted equitable tolling. Additionally, and more importantly, rarely have district courts in the Fourth Circuit concluded that litigation delays were an "extraordinary circumstance" that warranted equitable tolling. *See e.g.*, *Dolphus v. Servis One, Inc.*, No. CV GLR-16-1075, 2018 WL 11425442, at *2 (D. Md. Aug. 3, 2018) ("Some potential plaintiffs' claims may expire before they receive notice of the collective action, even

when a court grants class certification early in the litigation . . . The fact that an employee's FLSA claim expires before he or she received notice of a collective action is not in itself extraordinary, but rather an anticipated result of the statutory framework."); *LaFleur v. Dollar Tree Stores, Inc.*, No. 2:12–cv–00363, 2012 WL 4739534, at *7 (E.D. Va. 2012) (denying equitable tolling where motion for conditional certification was still pending after three months); *Harbourt v. PPE Casino Resorts Maryland, LLC*, No. CV CCB-14-3211, 2017 WL 281992, at *3 (D. Md. 2017) (finding the four-month delay in granting a motion to dismiss and subsequent appeal was not an extraordinary circumstance); *MacGregor*, 2011 WL 2731227, at *2 (denying equitable tolling because the four-month time period in which a motion to dismiss was pending did not constitute an extraordinary circumstance). Courts have found extraordinary circumstances only when the delay was unusually lengthy, such as a motion for class certification pending for over a year. *Owens v. Bethlehem Mines Corp.*, 630 F. Supp. 309, 312–13 (S.D.W.V. 1986).

Here, Plaintiffs only allege that briefing on their motion will "inevitably cause a delay in notice being sent during the pendency of the briefing period and issuance of this Court's order on the Motion." Plaintiffs fail to cite any caselaw that supports such an assertion. Consistent with the Fourth Circuit decisions involving similar (or even more extensive) litigation periods, this Court should find that any time elapsed for briefing and deciding this Motion is not an extraordinary circumstance, and therefore, does not warrant equitable tolling.

## <u>CONCLUSION</u>

For all the foregoing reasons, Defendants respectfully submit that the Motion should be denied outright and in full, with prejudice because Plaintiffs have not demonstrated that they are similarly situated to the members of the putative collective they seek to represent. In fact, indisputable evidence establishes that Plaintiffs are not even similarly situated to one another.

Alternatively, if conditional certification of any collective is granted, the scope of that collective must be substantially narrowed to encompass only MHCs where Plaintiffs worked and the period during which Plaintiffs contend that Horizon had a policy or practice of not paying overtime at those MHCs.

Dated: July 31, 2025

**NIXON PEABODY LLP**

Jennifer K. Squillario
799 9th Street NW, Suite 500
Washington, DC 20001-5327
Tel: (202) 585-8000
jsquillario@nixonpeabody.com

Christopher J. Stevens (*pro hac vice*)
Vincent E. Polsinelli (*pro hac vice*)
677 Broadway, 10th Floor
Albany, New York 12207
Tel.: (518)427-2650
vpolsinelli@nixonpeabody.com
cstevens@nixonpeabody.com

*Attorneys for Defendants Horizon Land
Management, LLC and Ryan Hotchkiss*