IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND
*Northern Division*

| | |
|---|---|
| SABRINA LUCERO, an individual,<br>*Pueblo County, CO* | : <br> : <br> : |
| DONOVAN MCCLURE, an individual,<br>*Pueblo County, CO* | : <br> : <br> : |
| KARIANE AMPARAN, an individual,<br>*Fremont County, CO* | : <br> : <br> : |
| on behalf of themselves and those similarly situated, | : <br> : |
| Plaintiffs, | :     Case No: 25-cv-00903-JKB <br> : |
| v. | : <br> : |
| HORIZON LAND MANAGEMENT, LLC,<br>a Maryland limited liability company, and<br>*Anne Arundel County, MD* | : <br> : <br> : <br> : |
| RYAN HOTCHKISS, an individual,<br>*Anne Arundel County, MD* | : <br> : <br> : |
| Defendants. | : |

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR
CONDITIONAL CERTIFICATION OF
<u>COLLECTIVE ACTION OF FAIR LABOR STANDARDS ACT CLAIM</u>**

Plaintiffs Sabrina Lucero, Donovan McClure, and Kariane Amparan ("Plaintiffs"), on behalf of themselves and all others similarly situated, by and through counsel, Leventhal Swan Taylor Temming PC and Viruni Law, submit their Reply in Support of their Motion for Conditional Certification of Fair Labor Standards Act Claim ("Motion") as follows:

**<u>INTRODUCTION</u>**

The Motion satisfies the modest burden for conditional certification under 29 U.S.C. §216(b) that is engrained within the Fourth Circuit. Defendants improperly attempt to (a) establish

that their practices comport with the law, (b) create fact and merit disputes that are irrelevant at the notice stage, (c) manufacture individualized differences, and (d) limit Plaintiffs' ability to effectuate notice. Plaintiffs' Motion should be granted along with all other relief requested.

## **ARGUMENT**

**I.      PLAINTIFFS EASILY MAKES THE MODEST FACTUAL SHOWING REQUIRED FOR FIRST STAGE CONDITIONAL CERTIFICATION.**

Plaintiffs have satisfied the standard for conditional certification. *See Lancaster v. FQSR*, 2020 WL 5500227, at *3 (D. Md. 2020); *Jackson v. Am. Elec. Warfare Assocs., Inc.*, 2023 WL 5154518, at *3 (D. Md. 2023). At this early stage, Plaintiffs' allegations, declaration testimony, and other exhibits, in addition to newly introduced documentation by Defendants which actually *supports* Plaintiffs' allegations, constitute (at least) the requisite modest factual showing that Hourly Employees were common victims of a policy and practice designed to deny them overtime compensation. This evidence is sufficient for conditional collective certification in this District. *See Jackson*, 2023 WL 5154518, at *3.

   A.   <u>Plaintiffs Establish the Existence of Defendants' Illegal Pay Practices Beyond Colorado</u>.

Defendants seek to impose a stricter burden for Plaintiffs at conditional certification because they proposed a nationwide class. *See generally* Resp. But Defendants identify no case law imposing a higher standard for conditional certification of a nationwide collective compared to a regional, statewide, or local one. The lenient notice stage standard applies to conditional certification of collectives regardless of scope; the Court should reject Defendants' attempt to unilaterally impose a more stringent burden than is required in the Fourth Circuit.

Defendants' attempts to dismiss Plaintiffs' evidence regarding their company-wide compensation and timekeeping policies miss the mark. Defendants assert that Colorado-based Plaintiffs seek a nationwide collective based on their "anecdotal accounts." Resp. at 3. Plaintiffs

produced (a) an email from Defendants' corporate office to its regional managers ("RMs") explaining their wage policies as applied to CMs, AMs, and MTs,[1] and (b) an instructional video explaining the same to employees. This evidence, *in addition* to the substantial allegations of the Complaint and accompanying declarations, satisfies the two-step *ad hoc* approach to conditional certification. *See* Motion at 5-6; Exhibits 1 and 3 to Motion. Defendants sidestep these important pieces of evidence by labeling them as "benign." Resp. at 5, 15. But Defendants' self-serving labels cannot minimize the importance of these documents. These exhibits demonstrate the "chain of command" and authority that Defendants' corporate office in Maryland had over (a) establishing the prevailing timekeeping and wage practices, (b) disseminating the instructions to middle management without location-based distinctions, and (c) ensuring strict compliance therewith. These communications, which were distributed to and enforced on Plaintiffs by Defendants, contribute to their personal knowledge of Defendants' nationwide timekeeping and wage practices.

Notably, Defendants do not dispute that these communications involved corporate employees who worked for Defendants across the country and do not suggest that those policies only applied to particular geographic regions. *See generally* Resp. These policies clearly applied to each of the identified positions within the Hourly Employee collective (*i.e.*, CMs, AMs, and MTs) regardless of where they worked. Defendants have not identified any state-by-state or lot-by-lot differences in compensation policy—which is the basis for the underlying claims.

Defendants rely on *Bernard, Chapman*, and *Andrews* as authority for this Court to deny, or at least limit, conditional certification. *See* 231 F.Supp.2d 433 (E.D. Va. Nov. 21, 2002); 623 F.Supp.3d 664, 676 (E.D. Va. 2022); 2024 WL 4154825, at *5 (W.D. N.C. 2024). But Defendants overlook key factors relevant to those courts in limiting the scopes of the classes to a particular

---

[1] Plaintiffs adopt Defendants' shorthand for these roles. *See generally* Resp.

geographic area—namely the evidence, if any, over and above the plaintiffs' declarations. The *Bernard* Court noted that the plaintiffs did not assert "any specific allegations regarding practices in other offices—no names of employees or supervisors, and no indication that the problems alleged … exist elsewhere." *Bernard*, 231 F. Supp. 2d at 436. Likewise, the plaintiffs in *Andrews* presented only their declarations and the job description used throughout the country for the job title at issue. *See Andrews*, 2024 WL 4154825, at *5. The *Andrews* Court's holding concerning nationwide collectives applies only when declarants from a small geographic scope lack personal knowledge about the policies or practices of other offices. *See Chapman*, 623 F.Supp.3d at 676.

This is inapposite to this case where Plaintiffs have provided several pieces of documentary evidence created and disseminated by Defendants' corporate employees which establish the application of Defendants' wage and timekeeping policies *beyond* mere declarations of the Plaintiffs. *See generally* Motion; Exhibits 1-3 to Motion. Plaintiffs here have (a) provided evidence over and above their own declarations, (b) provided specific "top-down" evidence originating from named corporate decision-makers, (c) attested to their own personal knowledge of nationwide practices based on the communications received from corporate employees, and (d) provided evidence of the illegal practices beyond a single geographic location. In doing so, Plaintiffs have identified both regional and national level employees involved in the illegal pay practices. *See id*. Plaintiffs set forth specific allegations concerning "practices in other offices" because the Plaintiffs were each "told by Defendants' corporate [office] that Defendants were implementing a new timekeeping policy on December 2, 2023." Exhibit 1 to Motion. Ms. Lucero herself "received an email from Ashley Cyrus, [Defendants'] Director of Human Resources … explaining Defendants' new timekeeping procedures and Comp Time policy." *See id*. Ms. Lucero then explained the same to Mr. McClure and Ms. Amparan as Defendants' top-down chain-of-command required. Plaintiffs

4

properly detail Defendants' national practice and its rollout based on their own personal knowledge. *See id.* Furthermore, Plaintiffs have submitted the consent form of Kimberly Cox, a former employee of Defendants in South Carolina. *See* Doc 32, 41. Ms. Cox further establishes the nationwide reach of Defendants' illegal pay practices.

B. <u>Joinder and Declaration of Kimberly Cox</u>.

On July 31, 2025, Plaintiffs filed the consent of Kimberly Cox, a former CM of Defendants in Charleston, South Carolina. Ms. Cox's employment as an hourly employee with Defendants was identical to the Plaintiffs in nearly every way. She was a non-exempt hourly employee who worked more than 40 hours each week; did not receive overtime pay for hours worked over 40 in a work week; was provided Comp Time in lieu of cash wages (and similarly was rarely, if ever, able to use it); and was instructed not to record more than 40 hours on her timesheets.

Ms. Cox's declaration confirms the uniformity of Defendants' pay practices across multiple states and multiple regions. *See* Exhibit 5.[2] Ms. Cox has personal knowledge about (a) Defendants' pay practices in South Carolina (including how RMs acted as extensions of HLM's corporate office in Maryland in establishing and enforcing the pay policies) as applied to her and her South Carolina colleagues, and (b) the extension of the same policies to others in her region (*i.e.*, North Carolina and Tennessee). Ms. Cox's inclusion and her testimony extend Plaintiffs' well-founded allegations (including Ms. Cox) beyond one limited geographic area.

Ms. Cox's joinder alone justifies nationwide certification. Where plaintiffs provide documentary evidence and declarations from named plaintiffs and opt-ins, nationwide certification is appropriate. *See O'Quinn v. TransCanada USA Servs.*, 469 F.Supp.3d 591, 605-06 (S.D. W.Va. 2020) (plaintiff met the bar for conditional certificate when he offered the declarations of opt-ins

---

[2] Plaintiffs continue numbering from their Motion.

as well as his own along with other evidence related to the employer's illegal policy across numerous locales).

    C. <u>Differences in Job Titles and Duties Are Irrelevant</u>.

Plaintiffs have established that conditional certification is proper even where some purported differences exist amongst a proposed collective; the plaintiffs need only demonstrate they are similarly situated to the proposed collective—not identical. *Byard*, 287 F.R.D. at 369 (N.D. W.Va. 2012). Further, Defendants' arguments ignore that "[i]ndividual circumstances are inevitably present in a collective action." *Butler v. DirectSAT USA, LLC*, 876 F. Supp. 2d 560, 570 (D. Md. 2012) (citing *Espenscheid v. DirecStat USA, LLC*, WL 2330309, at *8 (W.D. Wis. 2010)).

        i. <u>All Members of Proposed Collective Were Non-Exempt</u>.

Despite Defendants' efforts to create division within the putative Collective, they gloss over one unavoidable link between Plaintiffs and those they seek to represent: Each was classified as a non-exempt hourly employee. *See* Resp. 4-6. The underlying legal issue—whether Defendants' overtime practices properly compensated non-exempt employees—is identical. Whether a member of the Collective was a CM, AM, or MT is immaterial because each was non-exempt. *See Lancaster*, 2020 WL 5500227 at *3-5 (conditionally certifying collective of all non-exempt employees regardless of job title); *TBC Gordon*, 134 F. Supp. 3d at 1034 (nationwide collective certified where employees were paid under the same policy); *Byard v. Verizon West Virginia, Inc.*, 287 F.R.D. 365, 371 (N.D. W.Va. 2012) (courts routinely find that plaintiffs are similarly situated despite "distinctions in their job titles, functions, or pay"); *Kneppar v. Elevance Health Companies, Inc.*, 2024 WL 1156406, at *4 (D. Md. 2024) (internal quotations omitted) ("granular differences in job titles and duties cannot defeat a preliminary showing of similarity sufficient to justify conditional certification").

The Court need not examine differences in job duties because they are irrelevant to non-exempt status; Defendants did not apply a salary exemption to any of the job titles at issue such that analyses of job duties across multiple positions are unnecessary. *See generally* Resp.; 29 C.F.R. § 514.100-200.

      ii. <u>Minor Differences Can Be Resolved by Subclasses</u>.

Defendants argue that conditional certification should be denied because too many differences exist for the Court to manage and adjudicate the claims effectively. *See* Resp. at 4-6; 18-21. Not only is this argument premature since the Court considers individualized inquiry at the second stage (*i.e.*, decertification),[3] but no factually or legally relevant differences exist across Plaintiffs or the job titles within the proposed collective—namely because all employees were non-exempt and paid by the hour—meaning the Court can resolve the legal challenges to Defendants' non-exempt compensation policy as to the entire Collective in one fell swoop. All Plaintiffs were entitled to overtime due to their non-exempt status,[4] worked more than 40 hours per week, and used paper timesheets to record the hours Defendants allowed them to record. *See* Exhibits 1-3 to Motion. The Court's analysis of Defendants' compensation plan as applied to non-exempt employees remains the same across all job titles. *See Lancaster*, 2020 WL 5500227 at *3-5.

To the extent the Court believes purported minor differences in job duties within the broader group of Hourly Employees might be relevant, any differences can be resolved by breaking the Collective into three easily identifiable subclasses: Subclass I: Community Managers; Subclass II: Assistant Community Managers; Subclass III: Maintenance Technicians. Though unnecessary,

---

[3] *See Butler*, 876 F. Supp. 2d at 570 (arguments about the predominance of individualized inquiries and dissimilarities between plaintiff and other employees are "properly raised after the parties have conducted discovery and can present a detailed factual record for the court to review" at decertification).

[4] *See* 29 U.S.C. § 207.

the Court can *sua sponte* impose subclasses to resolve purported conflicts alleged by Defendants. *See Espenscheid v. DirectSat USA, LLC*, 2011 WL 2009967, at *2 (W.D. Wis. 2011), *amended*, 2011 WL 2132975 (W.D. Wis. 2011), and *aff'd*, 705 F.3d 770 (7th Cir. 2013) (determining that employer's challenges to conditional certification could be managed through bifurcation and the creation of subclasses); *LaFleur v. Dollar Tree Stores, Inc.*, 30 F. Supp. 3d 463, 474 (E.D. Va. 2014) (internal citations omitted) ("[t]here are means to aid in making individualized fact determinations such as … designating subclasses"); *Rawls v. Augustine Home Health Care, Inc.*, 244 F.R.D. 298, 302 (D. Md. 2007) (denying motion to decertify and addressing defenses by imposing subclasses of plaintiffs). The creation of these three subclasses could, if necessary, further assist the Court in managing the collective action process and eliminate potential overlap and/or minute differences between the three job titles at issue.

## II. DEFENDANTS IMPROPERLY INJECT FACT AND MERIT DISPUTES WHICH ARE NOT RESOLVED AT THE NOTICE STAGE.

A. <u>Fact Disputes Not Considered or Resolved at Notice Stage</u>.

A fact-intensive inquiry is inappropriate at the notice stage as plaintiffs are seeking only conditional certification. *See Edwards v. Optima Health Plan*, 2021 WL 1174724, at *3 (E.D. Va. 2021) ("the Court does not need to resolve factual disputes or decide substantive issues"); *Essame v. SSC Laurel Operating Co. LLC*, 847 F. Supp. 2d 821, 825 (D. Md. 2012) ("the court does not … resolve factual disputes, or make credibility determinations" at the notice stage).

i. <u>Defendants' Declarations</u>.

Defendants offer two declarations in support of their opposition to conditional certification. *See* Thorne Dec.; Costello Dec. Defendants offer written testimony from Amy Thorne (Plaintiffs' RM) and Kate Costello (Defendants' Chief Operating Officer) about Plaintiffs' substantial evidence. *See id*. Both declarants claim that (a) Defendants' policies were compliant, (b) Plaintiffs

8

either did not work overtime or were properly paid it, and (c) that differences between Plaintiffs and the proposed Collective render conditional certification improper. *See id*. But Defendants' declarations carry no weight at the notice stage.

Employers often rely on declarations from their own management employees (or others within the proposed class) to oppose conditional certification—but they are irrelevant. Not only do the declarations introduce improper fact disputes and merit-based arguments, they are improper for another reason: they are unreliable. Over decades of FLSA jurisprudence, "happy camper" declarations have been disregarded. Such declarations "are generally entitled to little or no weight at [the notice] stage, given the risk that the employer secured such declarations through explicit or implicit coercion" and they "[do] not undermine the Court's conditional certification decision." *Chapman*, 623 F. Supp. 3d at 678; *Edwards*, 2021 WL 1174724, at *3; *see also Smith v. Smithfield Foods, Inc.*, 2021 WL 6881062, at *9 (E.D. Va. 2021).

    ii.    <u>Meal Break Policy</u>.

To manufacture "individualized inquiry," Defendants claim that the application of their meal break policy as to Plaintiffs (and the Collective) creates enough difference to deny conditional certification. Essentially, Defendants argue that conditional certification should be denied because they *overpaid* Plaintiffs by compensating them for non-working time, thus requiring an after-the-fact analysis of whether the Plaintiffs worked during meal breaks to justify payment. If not, Defendants argue they should be able to claw back these wages or offset them against unpaid overtime. *See* Resp. at 18-20. This argument is nonsensical. Plaintiffs do not assert claims related to meal breaks. *See* Complaint; *see also* Motion. Defendants' argument also lacks merit because they cannot claim offsets against regular wages paid to Plaintiffs during purported meal breaks under the FLSA. *See Smiley v. E.I. Dupont De Nemours & Co.*, 839 F.3d 325, 333 (3d Cir. 2016);

*Acosta v. Team Env't, LLC*, 363 F. Supp. 3d 681, 687 (S.D. W.Va. 2019) (internal quotations omitted) ("Inasmuch as the only instances explicitly included in the offset portion of the FLSA, § 207(e)(5)-(7), require a premium rate paid, it is reasonable to infer that payments made at the regular rate cannot be considered extra compensation that may offset the amount owed for overtime."); *Acosta v. Romero Landscaping, Inc.*, 2019 WL 4447233, at *4–6 (D. Md. 2019) (emphasizing "premium rate" requirement). Defendants cannot amend Plaintiffs' Complaint to include meal break claims for the purpose of avoiding conditional certification.

Defendants' records also *confirm* that Plaintiffs did not take meal breaks because they were working through them, therefore justifying the payments Defendants characterized as individualized inquiry. *See* Resp. at 18-20. On July 31, 2025, Defendants produced payroll records for Plaintiffs including timesheets. Within these timesheets, Ms. Amparan specifically wrote "waived" in the "lunch start" and "lunch end" columns of her timesheets because she worked through them. *See* Exhibit 6, HORIZON 000089-000149. Ms. Lucero and Mr. McClure drew a line through the same two columns likewise indicating that they did not take meal breaks because they were working. *See id*. at 000385, 387. Defendants' argument fails.

B.  <u>Merit Issues Are Not Considered or Resolved at Notice Stage</u>.

Defendants introduce written testimony and certain exhibits (*e.g.*, declarations, timesheets, paystubs, and written policies) to suggest their compliance with the law and Plaintiffs' purported failure to advance substantial allegations of an illegal pay practice. *See* Thorne Dec, Exhibits A-I; Costello Dec., Exhibits A-B. But these arguments and documents "[go] to the merits of certain aspects of Plaintiffs' claims, which are not appropriate to resolve at the conditional certification stage." *Butler*, 876 F. Supp. 2d 560, 572; *Long*, 292 F.R.D. 296, 302 ("it is not appropriate for the Court to address the merits of this case at the motion for conditional certification phase"). Where

an employer's opposition to conditional certification "delves too deeply into the merits" of the action, the court need not take "such a deep plunge" at conditional certification because such inquiries are "inappropriate." *Essame*, 847 F.Supp.2d at 826.

Defendants urge this Court to deny conditional certification because Plaintiffs have not proven liability. But this merit-forward argument is improper. The Court in *Long* noted that the employer flouted this concept by "actually [leading] with a merits-based argument" in its opposition to conditional certification and stated, "as [defendant] is aware … it is not appropriate for the Court to address the merits of this case at the [] conditional certification phase." 292 F.R.D. at 302 n. 14. Defendants do the same here. The Court should reach the same result and cast aside Defendants' merit-based arguments against conditional certification. In any event, as described *infra*, these documents support, rather than refute, liability.

        i.    Defendants' Handbook Exhibit.

Defendants introduce their Employee Handbook in conjunction with declarations from Plaintiffs' RM and Defendants' COO. *See* Thorne Dec, Exhibits H-I; Costello Dec., Exhibits A-B. But written policies do not defeat conditional certification. *See Adams v. Citicorp Credit Servs., Inc.*, 93 F.Supp.3d 441, 454–55 (M.D.N.C. 2015) ("the fact that Citi had a written policy requiring that employees record any overtime work and prohibiting off-the-clock work does not defeat Plaintiffs' claims, particularly at this stage"). Courts within this District have refused to deny conditional certification when an employer relied on a written policy. *See Butler*, 876 F.Supp.2d at 569 (court granted conditional certification despite employer's formal policy mandating payment of overtime because it would hold plaintiffs to the second-stage standard); *Essame*, 847 F. Supp. 2d at 828 ("it is well-settled that the promulgation of written policies, per se, is insufficient to immunize an employer from conduct that otherwise contravenes the FLSA"); *Lancaster*, 2020

WL 5500227, at *5 (same); *Bobb v. FinePoints Private Duty Healthcare, LLC*, 2024 WL 1299929, at 5 n. 2 (same). That Defendants dispute Plaintiffs' allegations through written policies does not mean that Plaintiffs have failed to establish a basis for conditional certification. *See Mitchel v. Crosby Corp.*, 2012 WL 4005535, at *6 (D. Md. 2012).

       ii.    <u>Defendants' Timesheet and Paystub Exhibits</u>.

For many of the same reasons the Court should disregard Defendants' declarations and written policies, so too should the Court disregard Defendants' payroll documents. *See Essame*, 847 F.Supp.2d at 826; *Long*, 292 F.R.D. at 302; *Butler*, 876 F. Supp. 2d at 572. That Plaintiffs were paid some (although, as alleged, not all) overtime wages in late-2024 and early-2025 does not overcome their credible and substantiated allegations that they were *not* paid overtime wages in 2022, 2023, and most of 2024.[5] *See* Complaint; Exhibit 1 to Motion. Even if Plaintiffs were paid some overtime toward the end of their employment, the records introduce improper merit issues improper for consideration at the notice stage. *See Butler*, 876 F. Supp. 2d at 572.

**III.**    **DEFENDANTS' RECORDS SUPPORT CONDITIONAL CERTIFICATION**

    A.    <u>Timesheets Reflect Defendants' Scheme to Prevent Appearance of Overtime</u>.

Plaintiffs allege that they were denied overtime wages, in part, because Defendants instructed them not to record hours worked over 40 in individual work weeks. *See* Exhibit 1 to Motion. Ms. Cox says the same. *See* Exhibit 5. A simple mathematical analysis of the timesheets demonstrates how Defendants capped Plaintiffs at 40 hours on their timesheets to give the appearance that overtime was not incurred. Defendants offer several exemplar timesheets and paystubs for two of the three named Plaintiffs to refute the merits of their claims. These cherry-

---

[5] *See Essame*, 847 F. Supp. 2d at 828 ("Even if Patuxent compensated Plaintiffs for 'some' of the overtime that they worked, it does not follow that Patuxent properly compensated Plaintiffs for 'all' of their overtime hours").

picked records from a collection of more than 650 documents produced to Plaintiffs shortly after Defendants' response was filed do not overcome the evidence. Merit issues are not resolved at the notice stage, and such arguments should be ignored. *See Butler*, 876 F. Supp. 2d at 572. Also, the timesheets produced by Defendants support Plaintiffs' allegations rather than contradict them.

Per Defendants' timekeeping and pay practices, Ms. Lucero was unable to record hours worked over 40;[6] so, she added up the hours worked Monday through Thursday, subtracted that sum from 40, and entered the difference as her hours worked on Friday. The result? A perfectly even 40-hour work week. Ms. Lucero often worked long shifts—regularly recording more than 8 hours per day Monday through Thursday. On Fridays, Ms. Lucero recorded substantially fewer hours. *See* Exhibit 7, HORIZON 000345. This is not because she was afforded an "early release"—but rather by design. For example, for the pay period ending April 12, 2024, Ms. Lucero worked 32.93 hours over the first four days that week—each exceeding eight hours. The fifth day, Plaintiff recorded precisely 7.07 hours to arrive at a 40-hour work week. This theme is consistent. *See id*. at HORIZON 000346, 348, 352-53, 355, 361-62, 371. The same mathematical process yields the same results for most of Defendants' timesheets.[7] *See id*. at HORIZON 000539, 546, 554, 558. Ms. Amparan nearly always recorded exactly eight hours of work each day so as to not exceed 40 because she knew she would not be paid for it. *See* Group Exhibit 6. This process illustrates Defendants' scheme to (a) deny Plaintiffs and the Collective overtime wages, (b) give the appearance that Plaintiffs did not work more than 40 hours in individual work weeks, and (c) give the appearance that Defendants' policies were compliant.

---

[6] *See* Exhibit 1 to Motion.

[7] Interestingly, Defendants do not support their positions with paystubs or timesheets from Ms. Amparan.

13

The timesheets within Defendants' bulk production also show that Plaintiffs worked overtime but were not paid it. For pay period ending July 12, 2024, Ms. Lucero recorded .02 hours of overtime but was not paid it. *See* Exhibit 8 at HORIZON 000283, 358. For the week of August 9, 2024, Ms. Lucero recorded 41.02 hours but was not paid 1.02 hours of overtime. *See id*. at 000278, 360. Mr. McClure recorded overtime for the weeks ending March 8, 2024, April 12, 2024, and May 10, 2024 but was not paid it. *See id*. at 000451, 456, 498, 543, 551, 557.

The Comp Time policy is also prevalent in Defendants' records. For the week ending October 18, 2024, Mr. McClure worked six days including three hours on an off day. Curiously, Mr. McClure's Sunday hours are marked as "Comp Time" rather than "Regular Hours" such that he does not go above 40 hours. Mr. McClure recorded 38 hours of work, but because three of those hours were categorized as "Comp Time," they did not count toward his total hours worked for the week. Defendants then offset five additional hours as PTO, which were merely "comp" overtime hours from another work week. *See* Exhibit 8, HORIZON 000372, 523, 548.

B. Plaintiffs' Evidence Refutes Recently Adopted Handbook Policies.

Defendants introduce legal and factual disputes to avoid conditional certification. Defendants rely on their Employee Handbook to evidence compliance with the law. While these written policies do not defeat conditional certification in any event,[8] Defendants' production of these documents underpin Plaintiffs' allegations. The handbook policies attached to Defendants' declarations reveal an important detail; the policies were adopted in *February 2025*—a few weeks before the suit was initiated. The date of the handbook policies further informs that the policies were "v1," or the first version of those policies. Defendants only adopted purportedly compliant wage policies *after* Ms. Lucero submitted a complaint to the Colorado Department of Labor and

---

[8] *See Essame*, 847 F. Supp. 2d at 828.

Employment in late 2024. *See* Exhibit 1 to Motion. Defendants simply reacted to a complaint about their illegal policies. The handbook does not refute Plaintiffs' well-supported claims of pay practices imposed between 2022 and late-2024.

Similarly, Defendants point to instances where Ms. Lucero and Mr. McClure were paid overtime as bases for denial of conditional certification. Not only are these merit-based arguments improper at this stage,[9] but the timing of these payments is consistent with the Plaintiffs' allegations. The Plaintiffs allege that they did not receive overtime between 2022 and sometime in 2024. *See* Exhibit 1 to Motion. Defendants do not produce any timesheets and paystubs reflecting paid overtime from a period of more than two years. The fact that Defendants perhaps eventually updated their pay practices to comply with the law does not negate Plaintiffs' well-pleaded allegations concerning Defendants' illegal pay practices between 2022 and late-2024.

C. <u>Vreeman Paystub</u>.

Defendants again introduce improper merit-based arguments. Defendants, claiming they complied with the FLSA, produce a single paystub which they purport reflects properly paid overtime for one of their current employees—Billie Vreeman. While the Court should dismiss this evidence because it represents factual disputes and merit arguments improper at the notice stage, the individual paystub is of little relevance and does not overcome the other substantial allegations and evidence offered by Plaintiffs and opt-in.

It is odd that a company with a compliant overtime policy could only provide one single instance of allegedly proper overtime payment for an entire state's employment population before October 2024. If Defendants were always compliant with the FLSA, they should be able to easily produce multiple documents showing properly paid overtime for numerous employees across the

---

[9] *See Long*, 292 F.R.D. 296, 302.

15

state over the entire relevant period. But Defendants produce a single paystub. While Plaintiffs believe that Ms. Vreeman's close personal relationship with Amy Thorne, the RM overseeing Colorado, likely played a role in Defendants' selection of her as their lone example of alleged compliance,[10] it does not impact the Court's decision because the merit-based disputes introduced by Defendants through Vreeman's paystub are ignored at the notice stage. Should the parties later brief the merits at summary judgment or proceed to trial, Defendants are welcome to present evidence of compliance at that time.

## IV. PLAINTIFFS' NOTICE PLAN AND DOCUMENTS ARE PROPER.

Defendants urge this Court to require the parties to meet and confer about notice. Resp. at 21-22. The Court should reject this plea. Defendants should not now get the benefit of court ordered conferral permitting them to interfere with Plaintiffs' properly drafted materials, including requests to add language intended to chill participation. *See* Resp. at 21-22.

### i. Plaintiffs' Proposed Notice and Consent Forms Are Proper.

Plaintiffs stand on the Motion's arguments for their proposed notice and consent forms. Plaintiffs' forms have been approved by multiple federal courts. The repeated approval of this language confirms that the language is fair, representative of this suit, and appropriately informs the Collective of this matter. By suggesting different language, Defendants seek to inhibit and chill participation in this collective action to insulate themselves from additional liability.

### ii. Plaintiffs' Proposed Notice Procedure is Proper.

Plaintiff need not repeat the points made in their Motion on notice procedure. *See* Motion at 10-11. Plaintiffs provided all necessary authority regarding the propriety of their notice plan,

---

[10] Vreeman's paystub, like a "happy camper" declaration, should be disregarded. *See Chapman*, 623 F. Supp. 3d at 678.

including the notice language and methods of distribution. Defendants merely seek to restrict the broad, remedial purpose of the FLSA; their arguments are meritless. *See id.*

Defendants urge that Plaintiffs be limited only to mailed notices. *See* Resp. at 22. Defendants cite a single case from the Western District of Viginia in support. *See id.* But Courts in this Circuit and District have held that notice by mail only is insufficient. *See Biscardi v. Gov't Emps. Ins. Co.*, 2023 WL 155238, at *5 (D. Md. 2023) ("Courts in the Fourth Circuit have frequently permitted FLSA notices to be distributed via text and email, and the Court does not find a compelling reason why notice in this matter should be limited to traditional mail"). Defendants' proposed limitations are inappropriately narrow, ignore well-established authority, and contradict Fourth Circuit practice. *See Thomas v. Maximus, Inc.*, 2022 WL 1482010, at *8 (E.D. Va. 2022) ("The Court authorizes Notice of the instant suit by mail, email and text message, as courts throughout the Fourth Circuit commonly do."). Given the proposed nationwide scope of the Collective which may very well include thousands of Hourly Employees, limiting notice to only U.S. Mail, the least reliable form of communication in 2025, stands to benefit Defendants by limiting the chances for Hourly Employees to join the suit. The broad, remedial purpose of the FLSA—particularly given the scope of the Collective—supports Plaintiffs' notice plan. *See* Motion at 10-11.

Defendants object to Plaintiffs' apparent requests for Hourly Employee's dates of birth. *See* Resp. at 22. But Plaintiffs do not request dates of birth; Plaintiffs properly seek contact information (*e.g.*, mailing addresses, phone numbers, and e-mail addresses) and certain employment information (*e.g.*, dates of employment, job titles, and job locations). *See* Motion at 10-11. To the extent any portion of Plaintiffs' Motion was construed as a request for dates of birth, Plaintiffs clarify they do not seek that information.

## V.     DEFENDANTS' REMAINING PERIPHERAL ARGUMENTS FAIL.

### A.  The Three-Year Lookback is Appropriate for Conditional Certification.

Defendants claim that the Collective should be limited to those who worked for them in the two years preceding the Complaint rather than three. *See* Resp. at 3. Defendants' assertion that the three-year lookback is improper because the Plaintiffs have not established a "willful violation of the FLSA" represents (another) improper merit-based argument not addressed at this stage.[11] *See Chapman*, 623 F. Supp. 3d at 679 (declining to address defendants' argument whether the two- or three-year statute of limitations applies because such an argument is merit-based); *Santos v. E&R Servs.*, Inc., 2021 WL 6073039, at *5 (D. Md. 2021) ("defendants may challenge the applicability of a three-year statute of limitations if they move to decertify the collective action"); *Cummins v. Ascellon Corporation*, 2020 WL 6544822, at *9 (D. Md. 2020) (same). The Court should apply the three-year lookback for purposes of conditional certification and notice.

### B.  The Court Should Equitably Toll the Statute of Limitations.

Defendants argue that the statute of limitations should not be tolled because Plaintiffs have failed to demonstrate an "extraordinary circumstance to warrant such relief." *See* Resp. at 3, 23-24. Denying tolling would benefit Defendants at the expense of Plaintiffs, allowing Defendants to reduce their liability during the pendency of the action. Only Defendants possess dates of employment for the putative collective and are thus uniquely positioned to know how much liability they can avoid should the Court not toll the statute of limitations. No harm is immediately done to Defendants by tolling the statute of limitations now—Defendants can always raise statute

---

[11] Defendants also argue Plaintiffs have not "plausibly alleged" a willful violation of the FLSA. Resp. at 3. Defendants waived this argument because they did not raise it in response to Plaintiffs' Complaint via Fed. R. Civ. P. 12.

of limitation arguments at decertification, summary judgment, or trial. *See Santos*, 2021 WL 6073039 at *5. Plaintiffs otherwise stand on their arguments for tolling. *See* Motion at 11-13.

## CONCLUSION

Plaintiffs have satisfied the lenient threshold to conditionally certify a nationwide collective action consistent with Fourth Circuit precedent. Defendants' fact- and merit-based arguments and otherwise premature arguments fail. Plaintiffs' Motion should be granted.

Respectfully submitted this 28th day of August, 2025.

*/s/ Samuel D. Engelson*
Andrew E. Swan (Colorado Bar No. 46665)
Samuel D. Engelson (Colorado Bar No. 57295)
LEVENTHAL SWAN TAYLOR TEMMING PC
3773 Cherry Creek North Drive, Suite 710
Denver, Colorado 80209
Telephone: (720) 699-3000
Facsimile: (866) 515-8628
Email:    aswan@lstt.law
              sengelson@lstt.law


*/s/ Vincent Z. Viruni*
Vincent Z. Viruni (Maryland Bar No. 20414)
Viruni | Law
137 National Plaza, Suite 300
National Harbor, Maryland 20745
Phone: (866) 405-1615
Fax: (866) 321-1102
vviruni@virunilaw.com

*Attorneys for Plaintiffs*