# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

SABRINA LUCERO, et al.,                    *

     Plaintiffs,                            *

     v.                                     *          CIVIL NO. JKB-25-0903

HORIZON LAND MANAGEMENT, LLC,   *
et al.,

     Defendants.                            *

    *    *    *    *    *    *    *    *    *    *    *    *

## MEMORANDUM

Pending before the Court is Plaintiffs' Motion for Conditional Certification of Collective Action. (ECF No. 23.) The Motion will be granted in part and denied in part.

## I.    FACTUAL BACKGROUND

Horizon Land Management LLC ("Horizon") is a Maryland company which owns and operates manufactured home communities in 19 states. (ECF Nos. 1 ¶ 29; 31-2 ¶ 4.) Its CEO is Ryan Hotchkiss. (ECF No. 1 ¶ 15.)

This case was brought by Sabrina Lucero, Donovan McClure, and Kariane Amparan against Horizon and Hotchkiss. All three Plaintiffs worked at—or are still working at—Horizon properties in Colorado. Beginning in March 2022, Lucero worked as both a Community Manager ("CM") and Assistant Community Manager ("ACM") for almost three years at two different Horizon locations in Colorado. (*Id.* ¶ 31.) Starting in January 2023, McClure worked as a Maintenance Technician ("MT") for almost two years at six different locations in Colorado. (*Id.* ¶ 33.) Amparan has been a CM for Horizon since June 2022 and, as of the date of the Complaint, remains working there. (*Id.* ¶ 35.) She has worked at only one Horizon location in Colorado. (*Id.*)

CMs and ACMs are generally responsible for managing Horizon properties and supervising employees on the premises. (ECF No. 31-2 ¶¶ 6–7.) MTs perform various maintenance tasks. (*Id.* ¶ 8.) CMs, ACMs, and MTs are ordinarily the only categories of employees who work at Horizon properties. (*Id.* ¶ 5.)

Each Plaintiff was hired as a non-exempt employee under the Fair Labor Standards Act ("FLSA"), meaning that when they worked overtime, they were entitled to be paid at a rate of 1.5 times their normal wage. (ECF No. 1 ¶¶ 37, 43.) Plaintiffs allege a scheme in which they were not properly paid for their overtime work. They explain that they were routinely required to work more than 40 hours per week. (*Id.* ¶ 39.) They were given company cell phones and required to be "on-call" at all times. (*Id.*) They also could not turn down on-call work. (*Id.*) When Plaintiffs worked more than 40 hours per week, they were not paid overtime pay. Rather, for each hour of overtime worked, they were given one hour of compensatory time ("comp time"). (*Id.* ¶ 43.) However, Defendants required that comp time be used within one week or be forfeited. (*Id.* ¶ 45.) Furthermore, Defendants usually denied Plaintiffs' requests to use their comp time. (*Id.*)

Plaintiffs explain that they did receive some overtime pay starting in early 2025. (ECF No. 23-1 at 3, 6, 9.) However, they assert that these payments were still insufficient. (*Id.*) They also claim that Defendants only started paying overtime wages after a complaint was made to the Colorado Department of Labor and Employment. (*Id.*)

Finally, Plaintiffs claim that their supervisors, Amy Thorne and Sarah Winters, instructed them to manipulate their timesheets. (ECF No. 1 ¶ 41.) Specifically, when Plaintiffs worked more than eight hours per day on Monday through Thursday, they were told to falsely limit their Friday hours on their timesheets to show that they only worked 40 hours during the week. (*Id.*) Thus,

even though Plaintiffs would work more than 40 hours per week, their timesheets would show that they did not work overtime.

Plaintiffs allege that Defendants' actions violated the FLSA and Colorado labor law. Plaintiffs seek to bring the Colorado claims as a class action and the FLSA claim as a collective action. In the instant Motion, they are seeking conditional certification, on a nationwide basis, of an FLSA collective comprising all current and former hourly employees—regardless of official title—"who were employed by Defendants in the United States during the three years preceding the filing of this case." (ECF No. 23-5 at 1.)

In support of their Motion, Lucero, McClure, and Amparan have all filed nearly identical affidavits attesting to the allegations described above. (*See generally* ECF No. 23-1.) Plaintiffs also produce an email from Horizon's Director of Human Resources, Ashley Cyrus. (ECF No. 23-3.) Cyrus worked out of Horizon's headquarters in Maryland. (*Id.* at 3.) Her email, seemingly sent to supervisors around the country, explained the new timekeeping policy that Horizon adopted in November 2023. (*See generally id.* at 1–3.) This policy required employees to fill out paper timesheets each week. (*Id.* at 1.) Cyrus' email also included a link to a YouTube video which provided instructions for filling out the timesheet. (*Id.*) In her email, Cyrus stated that the policy applied to CMs, ACMs, MTs, and "other hourly staff." (*Id.* at 1–2.)

Additionally, after Plaintiffs filed their Motion but before briefing concluded, an additional Plaintiff, Kimberly Cox, opted into this action. (ECF No. 41.) Cox submitted an affidavit in which she explained that she worked as a CM at several Horizon properties in South Carolina from January 2024 to July 2025. (ECF No. 44-1 at 1.) Her allegations regarding Horizon's overtime policies are nearly identical to those of the Colorado Plaintiffs. Cox further states that she has

spoken to Horizon employees in North Carolina and Tennessee and is "aware" that they also did

not receive overtime. (*Id.* at 3.)

## II.    LEGAL STANDARD

"Congress enacted the FLSA to protect workers from substandard wages and excessive

hours that resulted from unequal bargaining power between employers and employees." *Rineholt*

*v. HFS Fin. LLC*, No. CV ABA-22-3253, 2024 WL 1243844, at \*2 (D. Md. Mar. 21, 2024)

(internal quotation marks and citation omitted). Section 216(b) of the FLSA provides in relevant

part that an action for violations of the statute "may be maintained against any employer . . . in any

Federal or State court of competent jurisdiction by any one or more employees for and in behalf

of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). The statute

further provides that "[n]o employee shall be a party plaintiff to any such action unless he gives

his consent in writing to become such a party and such consent is filed in the court in which such

action is brought." *Id.* A district court can aid this "opt-in" process by conditionally certifying a

collective and facilitating notice of the lawsuit to putative members of the collective. *Bobb v.*

*FinePoints Priv. Duty Healthcare, LLC*, No. CV JKB-23-03129, 2024 WL 1299929, at \*2 (D. Md.

Mar. 27, 2024).

The decision whether to certify a collective action under the FLSA lies within the sound

discretion of the district court. *Essame v. SSC Laurel Operating Co.*, 847 F. Supp. 2d 821, 824

(D. Md. 2012). Courts employ "a two-step process to test the sufficiency of the purported class:

(1) a pre-discovery determination that the purported class is similarly situated enough to

disseminate a notice . . . ; and (2) a post-discovery determination, typically in response to a motion

for decertification, that the purported class is indeed similarly situated." *Jackson v. Am. Elec.*

*Warfare Assocs., Inc.*, Civ. No. TDC-22-1456, 2023 WL 5154518, at \*2 (D. Md. Aug. 10, 2023).

4

The pre-discovery determination is a "modest inquiry" in which the Court merely "makes a threshold determination whether the class is similarly situated." *Mazariegos v. Pan 4 Am., LLC*, No. DLB-20-2275, 2021 WL 5015751, at *3 (D. Md. Oct. 28, 2021). However, at this stage, "vague allegations with meager factual support are generally insufficient." *Alderoty v. Maxim Healthcare Servs., Inc.*, No. CIV.A. TDC-14-2549, 2015 WL 5675527, at *5 (D. Md. Sept. 23, 2015). Rather, Plaintiffs must present "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Id.* Plaintiffs "may rely on affidavits or other means" to make this showing, and they "need not include evidence that the company has a formal policy of refusing to pay overtime." *Butler v. DirectSAT USA, LLC*, 876 F. Supp. 2d 560, 567 (D. Md. 2012). Finally, at this stage, "the [C]ourt does not weigh the merits, resolve factual disputes, or make credibility determinations." *Essame*, 847 F. Supp. 2d at 825 (internal quotations and citation omitted).

## III. DISCUSSION

### A. Conditional Certification

Plaintiffs seek to certify a nationwide collective of "[a]ll current and former Hourly Employees . . . who were employed by Defendants in the United States during the three years preceding the filing of this case." (ECF No. 23-5 at 1.) Plaintiffs have sufficiently alleged that all hourly employees in Colorado and South Carolina are similarly situated, but they have not made "substantial allegations" warranting certification of a nationwide collective.

Plaintiffs first allege that, regardless of the geographic scope of the collective, any proposed collective should include all categories of hourly employees who work for Horizon, including CMs, ACMs, and MTs. Defendants respond that each type of hourly employee performs different job functions, so they cannot be similarly situated to each other. While courts in this District

routinely find that the exercise of similar job responsibilities is an indicator that employees are similarly situated, *see, e.g., Mazariegos*, 2021 WL 5015751, at *3; *Coady v. Nationwide Motor Sales Corp.*, No. CV SAG-20-1142, 2022 WL 3369278, at *3 (D. Md. Aug. 16, 2022), this is not a requirement to meet the low bar of conditional certification. "[W]hen employees share a similar issue of law or fact material to the disposition of their claims, dissimilarities in other respects should not defeat collective treatment." *Jackson*, 2023 WL 5154518, at *3 (internal quotation marks omitted). There are numerous cases where "dissimilarities" in job duties, specifically, did "not defeat collective treatment." *E.g., id.* (certifying a collective of all hourly workers who were not paid overtime); *Lancaster v. FQSR*, No. CV TDC-19-2632, 2020 WL 5500227, at *2 (D. Md. Sept. 11, 2020) (certifying a collective of all nonexempt workers, except for managers, at a restaurant franchise); *Mazariegos*, 2021 WL 5015751, at *4 (finding that all employees at a bakery—including supervisors, bakers, and shift managers—were similarly situated). Overall, "while the employees' responsibilities on the job are important to this analysis, the touchstone inquiry is the potential plaintiffs' common relationship to the allegedly unlawful policy." *Blake v. Broadway Servs., Inc.*, No. CV CCB-18-086, 2018 WL 4374915, at *3 (D. Md. Sept. 13, 2018).

Here, Plaintiffs have sufficiently alleged that all hourly employees in Colorado and South Carolina have a "common relationship to the allegedly unlawful policy." *Id.* Plaintiffs submit affidavits from multiple CMs, an ACM, and an MT who allege nearly identical conduct by Defendants in both Colorado and South Carolina. (*See generally* ECF Nos. 23-1; 44-1.) Plaintiffs allege that management routinely required them to work overtime. But, according to Plaintiffs, when they worked overtime, they were only given one hour of comp time for each overtime hour worked; they were not paid 1.5 times their regular wage as the FLSA requires. Each Plaintiff also asserts that they were given company phones and were required to be available at all times to work

6

extra shifts on Defendants' properties. Plaintiffs then allege that after the paper timekeeping policy was instituted in 2023, supervisors instructed them to falsify their timesheets to show that Plaintiffs only worked 40 hours each week. Finally, each Plaintiff asserts that their Regional Manager implemented these allegedly unlawful policies. Overall, Plaintiffs have made "[c]ommon allegations" against Defendants and "[t]o support these allegations, Plaintiffs have provided sworn declarations." *Baylor v. Homefix Custom Remodeling Corp.*, 443 F. Supp. 3d 598, 607 (D. Md. 2020). These allegations suffice to demonstrate that Colorado and South Carolina Plaintiffs are similarly situated at the conditional certification stage. *See id.*

However, the Court cannot extend conditional certification beyond Colorado and South Carolina. Plaintiffs are correct when they note that the standards governing nationwide certification are the same as those for certification of a smaller collective. (ECF No. 44 at 2.) This means that the standard is still "relatively lenient," *Mazariegos*, 2021 WL 5015751, at *3, and Plaintiffs may rely on "affidavits or other means" rather than "a formal policy of refusing to pay overtime." *Butler*, 876 F. Supp. 2d at 567. However, Plaintiffs still must make substantial allegations of a nationwide scheme. "When declarations come exclusively from a small, geographically homogenous group of declarants, conditional certification of a nationwide collective is inappropriate if the declarants lack personal knowledge about the policies or practices at other offices." *Chapman v. Saber Healthcare Grp., LLC*, 623 F. Supp. 3d 664, 676 (E.D. Va. 2022).

While the allegations in this case are not limited to a single state as they were in *Chapman*, they are not substantial enough to warrant nationwide certification. Horizon operates MHCs in 19 states (ECF No. 31 ¶ 4), but Plaintiffs have provided detailed allegations regarding overtime policies in only two of those states. While Cox makes allegations about Defendants' policies in

North Carolina and Tennessee, these are too vague for the Court to credit. Cox states that she has spoken to former colleagues in these states and is "aware of" dozens of employees who did not receive overtime pay. (ECF No. 44-1 ¶ 15.) However, there are not "any specific allegations regarding practices in other offices—no names of employees or supervisors, and no indication that the problems alleged through first-hand knowledge in the [South Carolina offices] exist elsewhere." *Bernard v. Household Int'l, Inc.*, 231 F. Supp. 2d 433, 435 (E.D. Va. 2002). Thus, Plaintiffs are seeking nationwide certification even though they have only made substantial allegations of an illegal overtime policy in two states. When judges in this District have granted nationwide certification, they have required much more. *See, e.g., Biscardi v. Gov't Emps. Ins. Co.*, No. GJH-21-2240, 2023 WL 155238, at *3 (D. Md. Jan. 11, 2023) (conditionally certifying a nationwide collective based on affidavits from twelve employees located throughout the country); *Alvarez v. Gov't Emps. Ins. Co.*, No. CV GLR-24-722, 2024 WL 4679399, at *12 (D. Md. Nov. 5, 2024) (conditionally certifying a nationwide collective based on declarations from nine opt-in plaintiffs who worked in five different regions); *Andrade v. Aerotek, Inc.*, No. CIV.A CCB-08-2668, 2009 WL 2757099 (D. Md. Aug. 26, 2009) (declining to grant nationwide certification despite the presence of plaintiffs from two states). Accordingly, the Court concludes that nationwide certification is not appropriate in this case.[1]

## B. Notice

In FLSA collective actions, district courts have the responsibility to supervise contacts between potential plaintiffs and counsel "to ensure that employees receive accurate and timely

---

[1] Because the Court declines to grant nationwide certification, Defendants' concerns about the need for individualized inquiries are mitigated. (*See* ECF No. 31 at 22.) Regardless, this is a merits-based question that courts should not answer at the conditional certification stage. *Alderoty*, 2015 WL 5675527, at *10. Rather, "[o]nce discovery is complete, should [Defendants] move for decertification the Court will be better positioned to make a factual determination on whether individualized differences are significant enough to thwart the collective action." *Id.*

notice so that they can make informed decisions about whether to participate." *Degidio v. Crazy Horse Saloon & Rest. Inc.*, 880 F.3d 135, 143–44 (4th Cir. 2018) (quoting *Hoffman–La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989)) (cleaned up).   Courts have "broad discretion to determine the details of the notice sent to potential opt-in plaintiffs." *Alvarez*, 2024 WL 4679399, at *13 (internal quotation marks and citation omitted).

Defendants make three objections to the content and manner of distribution of Plaintiffs' proposed Notice form.   First, they assert that the Notice should advise potential opt-in plaintiffs of the "potential consequences" of joining the action, including being subject to written discovery, deposition, and cross-examination at trial.   (ECF No. 31 at 25.)   This language is routinely permitted in Notice forms. *See, e.g., Alvarez*, 2024 WL 4679399, at *13; *Kneppar v. Elevance Health Cos., Inc.*, No. CV MJM-23-863, 2024 WL 1156406, at *6 (D. Md. Mar. 18, 2024). Plaintiffs do not cite cases where courts have denied a request to add this language.   Accordingly, the Court will order that the following sentence be added to the section of the Notice titled "Effect of Joining the Lawsuit" as the second sentence in the paragraph: "You may be subject to written discovery, deposition, and/or cross-examination at trial."

Second, Defendants argue that the Notice should only be distributed by U.S. Mail, rather than by email, text message, and posting at Defendants' offices.   (ECF No. 31 at 26.)   This is unreasonable. The use of only U.S. Mail to contact potential opt-in plaintiffs is "clearly outdated." *Baylor*, 443 F. Supp. 3d at 609.   Furthermore, "courts in the Fourth Circuit have frequently permitted FLSA notices to be distributed via text and email." *Biscardi*, 2023 WL 155238, at *5. However, the Court recognizes that sending notice via text message is somewhat invasive, so it will only permit this method if a prospective plaintiff cannot be reached by U.S. Mail or email. Finally, posting of notice at a defendant's offices is also commonplace. *Baylor*, 443 F. Supp. 3d

9

at 609 (collecting cases). Accordingly, the Court will order that the Notice form be distributed by U.S. Mail, email, and, if necessary, text message, and that it be posted at Defendants' offices in Colorado and South Carolina.

Third, the parties debate what time period the Notice should cover. The FLSA's statute of limitations requires claims to be filed within two years of the date that a plaintiff's cause of action accrued. 29 U.S.C. § 255(a). However, this period is extended to three years if the violation was willful. *Id.* But "the question of whether the violations of the FLSA were willful is a merits determination that courts do not ordinarily address at the conditional certification stage." *Chapman*, 623 F. Supp. 3d at 679. Where, as here, Plaintiffs have alleged that Defendants' conduct was willful (ECF No. 1 ¶ 70), courts have found it "more efficient to issue a broader notice now and limit claims later." *Alderoty*, 2015 WL 5675527, at *14. Thus, the Notice should cover the time period beginning March 19, 2022 (three years before the Complaint was filed) through the close of the opt-in period.

Finally, because the Court has resolved all of Defendants' concerns about the Notice form, their requested meet-and-confer with Plaintiffs is unnecessary.

## C. Equitable Tolling

Plaintiffs request that the FLSA's statute of limitations be tolled from June 9, 2025 (the date they filed their Motion for Conditional Certification) through the date of the Court's order on the Motion. This request will be denied.

Courts may equitably toll a statute of limitations only when (1) the plaintiff has been pursuing her rights diligently, and (2) "some extraordinary circumstance" prevented her from timely filing her claim. *Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 255 (2016). A court should exercise its discretion to invoke equitable tolling only in those "rare

10

instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result." *Whiteside v. United States*, 775 F.3d 180, 184 (4th Cir. 2014) (en banc) (quotation omitted).

Here, Plaintiffs have not identified any extraordinary circumstance that would warrant equitable tolling. Plaintiffs do not argue that Defendants have prevented them or any potential plaintiffs from bringing claims earlier. And "ordinary litigation delay is not considered an 'extraordinary circumstance' warranting equitable tolling." *Schilling v. Schmidt Baking Co.*, Civ. No. TDC-16-2498, 2018 WL 3520432, at *7 (D. Md. July 20, 2018). While some courts have equitably tolled the FLSA's statute of limitations, typically in those cases there were unusual circumstances that led to the delay in conditional certification. *See, e.g., McCoy v. Transdev Servs., Inc.*, Civ. No. DKC-19-2137, 2020 WL 2319117, at *5 (D. Md. May 11, 2020) (equitably tolling FLSA statute of limitations because of delays associated with the COVID-19 pandemic); *Ruffin v. Entertainment of the E. Panhandle*, Civ. No. 3:11-19, 2012 WL 28192, at *2 (N.D. W. Va. Jan. 5, 2012) (equitably tolling because the Court delayed the question of conditional certification by several months in order to address a preliminary issue). Accordingly, the Court will decline to equitably toll the FLSA's statute of limitations.

### D. Additional Briefing on Transfer

As the Court will not certify a nationwide collective, the Court is uncertain that this litigation is best pursued in the District of Maryland. Because a collective will only be certified in Colorado and South Carolina, it seems probable that the majority of the evidence and witnesses will also be located in these states. Additionally, aside from the single FLSA claim, Plaintiffs' remaining claims all arise under Colorado law. Accordingly, the parties will be directed to brief whether this case should be transferred "[f]or the convenience of parties and witnesses, in the

11

interest of justice" under 28 U.S.C. § 1404(a). *See also Trs. of the Plumbers & Pipefitters Nat. Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015). The parties should address whether it would be more appropriate for the case to be transferred in its entirety to the District of Colorado or for the case to be bifurcated, with the claims of Ms. Cox and any South Carolina opt-in plaintiffs transferred to the District of South Carolina and the remaining claims transferred to the District of Colorado. If a party argues that transfer of the entire case to the District of Colorado is the proper course of action, that party should also address whether the District of Colorado would have personal jurisdiction over all potential plaintiffs.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Conditional Certification of Collective Action (ECF No. 23) will be granted in part and denied in part. A separate Order follows.

DATED this ___3___ day of December, 2025.

BY THE COURT:

James K. Bredar
United States District Judge

12