UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Northern Division*

| | |
|---|---|
| SABRINA LUCERO, an individual, *Pueblo County, CO* <br><br> DONOVAN MCCLURE, an individual, *Pueblo County, CO* <br><br> KARIANE AMPARAN, an individual, *Fremont County, CO* <br><br> on behalf of themselves and those similarly situated <br><br> Plaintiffs, <br><br> - vs. - <br><br> HORIZON LAND MANAGEMENT, LLC, a Maryland limited liability company, *Anne Arundel County, MD* <br> *~and~* <br> RYAN HOTCHKISS, an individual, *Anne Arundel County, MD*, <br><br> Defendants. | **ORAL ARGUMENT REQUESTED** <br><br> Case No.: 1:25-cv-00903-JKB |

---

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION TO STRIKE IMPROPERLY FILED OPT-IN CONSENT FORMS, FOR PRODUCTION OF COMMUNICATIONS, AND FOR PROTECTIVE ORDER**

---

**NIXON PEABODY LLP**
Jennifer K. Squillario, Esq.
799 9th Street NW, Suite 500
Washington, DC 20001-5327

Christopher J. Stevens, Esq.
Vincent E. Polsinelli, Esq.
677 Broadway, 10th Floor
Albany, New York 12207

*Attorneys for Defendants Horizon Land Management, LLC and Ryan Hotchkiss*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT.................................................................................................. 1

ARGUMENT ............................................................................................................................. 2

I.    PLAINTIFFS HAVE NOT EXPLAINED THE ORIGIN OF THE OUT-OF-SCOPE
       OPT-INS. ........................................................................................................................ 2

II.   PLAINTIFFS' MOTION TO EXPAND DOES NOT MOOT DEFENDANTS'
       MOTION. ........................................................................................................................ 3

III.  THE COURT HAS AUTHORITY TO SUPERVISE THE NOTICE PROCESS
       INDEPENDENTLY OF RULE 12(F). ........................................................................... 4

IV.  THE ADDITIONAL RELIEF REQUESTED BY DEFENDANTS IS WARRANTED......... 4

V.    STRIKING THE OPT-INS WOULD NOT "WASTE RESOURCES."................................ 5

CONCLUSION.......................................................................................................................... 6

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Gulf Oil Co. v. Bernard*,
   452 U.S. 89 (1981).................................................................................................3, 4, 5

*Hoffmann-La Roche Inc. v. Sperling*,
   493 U.S. 165 (1989).............................................................................................3, 4, 6

*Kelley v. Alamo*,
   964 F.2d 747 (8th Cir. 1992) ...................................................................................5

*Randolph v. PowerComm Construction, Inc.*,
   41 F. Supp. 3d 461 (D. Md. 2014)...........................................................................4

*Ruggles v. Wellpoint, Inc.*,
   687 F. Supp. 2d 30 (N.D.N.Y. 2009)........................................................................5

**Statutes**

29 U.S.C. § 256(b) ......................................................................................................5

Fair Labor Standards Act (FLSA)........................................................................4, 5, 6

Defendants Horizon Land Management, LLC ("Horizon") and Ryan Hotchkiss (collectively, "Defendants") respectfully submit this reply memorandum in further support of their Motion to Strike Improperly Filed Opt-In Consent Forms, for Production of Communications, and for Protective Order (the "Motion"). (ECF No. 62).

## PRELIMINARY STATEMENT

Plaintiffs' opposition to Defendants' Motion is most notable for what it does *not* say. Despite devoting seven pages to various procedural objections, Plaintiffs never once explain how individuals in Illinois, New York, New Jersey, Tennessee, and Texas came to learn of and opt into this action after this Court expressly declined to certify a nationwide collective and limited its' scope to Colorado and South Carolina via its December 4, 2025 order (the "Order"). (ECF No. 48). That silence speaks volumes.

This Court has broad, discretionary authority to manage the notice process. Via this motion, Defendants have requested that the Court exercise that authority to determine how the notice authorized by the Order resulted in only two opt-ins from Colorado and/or South Carolina,[1] yet someone resulted in five additional opt-ins from states outside of the Order's scope. Defendants further request that the Court issue appropriate relief enforcing its prior Order or authorizing additional discovery and protective measures that may be necessary or appropriate to limit the scope of the collective to that defined by the Order.

Plaintiffs' opposition seeks to deflect from this relatively straightforward request.  It treats the pending motion to expand as a *fait accompli*, which it is not. Further, Plaintiffs repeatedly emphasizes that there is no record of any inappropriate communications—but conspicuously have not provided any detail whatsoever about communications which they do not deny occurred.

---

[1] As indicated in Defendants' Opposition to Plaintiffs' motion to expand, the opt-in period is closed as of March 10, 2026.

The scope of this collective action is defined by the Court, not by Plaintiffs. Defendants' motion should therefore be granted. The Order should be enforced so as not to permit an end run around limits the Court already placed on the scope of this action.

## ARGUMENT

### I. PLAINTIFFS HAVE NOT EXPLAINED THE ORIGIN OF THE OUT-OF-SCOPE OPT-INS.

Plaintiffs' opposition states what the "Nationwide Plaintiffs" did but says *nothing* about how they came to do it.  A right to opt-in under § 216(b) does not explain how individuals in five states outside the Court-ordered scope learned of this litigation, were contacted, and filed consent forms during a notice period during which Plaintiffs were authorized to notice *only* individuals who worked for Horizon in Colorado and South Carolina.

Plaintiffs contend that Defendants have failed to produce any "evidence" of abusive communications. But that is precisely the problem—Defendants do not know what communications occurred because Plaintiffs have not disclosed them.[2]  Tellingly, Plaintiffs do not deny that communications occurred; nor do they offer any insight at all into the substance of said communications.

As Defendants explained in their opposition to Plaintiffs' Motion to Expand (ECF No. 71), one of two things must be true: either (1) Plaintiffs communicated with these individuals before filing the initial motion for conditional certification but affirmatively chose not to submit evidence from them—making their characterization of this as "new evidence" in the context of their motion

---

[2] Defendants filed this Motion prior to serving discovery requests because the parties previously agreed that dates should be postponed pending a scheduling conference to follow the Court's ruling on the original motion for conditional certification.  *See* ECF No. 42.  Pending that conference and the issuance of an updated schedule, the parties are authorized only to conduct limited discovery on "matters relating to class certification."  ECF No. 26. Rather than risk circumventing the Court's order on that issue by seeking discovery of the communications at issue, Defendants filed the instant motion.

to expand as disingenuous; or (2) Plaintiffs continued to communicate with and solicit new opt-ins after filing their initial motion and/or after receiving the Court's Conditional Certification Order—suggesting an attempt to circumvent the Court-approved notice process. These unexplained circumstances warrant the Court's inquiry under its broad supervisory authority over the notice process and the issuance of appropriate relief to curtail Plaintiffs' efforts to sidestep that authority. *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170-71 (1989); *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100-01 (1981).

## II.   PLAINTIFFS' MOTION TO EXPAND DOES NOT MOOT DEFENDANTS' MOTION.

Plaintiffs argue that their pending Motion to Expand (ECF No. 64) renders Defendants' Motion moot. This argument fails for two reasons. First, a pending motion does not retroactively authorize opt-ins filed in contravention of an existing Order. The Court's Order expressly rejected nationwide certification, holding that Plaintiffs' allegations "are not substantial enough to warrant nationwide certification." ECF No. 47, at 7-8. That Order remains binding until and unless it is modified. A pending motion to expand does not and cannot modify the existing Order. Allowing out-of-scope opt-ins to stand in the interim would undermine the Court's supervisory role, dilute the significance of the prior ruling, and invite iterative attempts to expand the collective through self-help rather than proper channels.

Second, even if Plaintiffs' motion to expand is eventually granted and the opt-ins filed by the Nationwide Plaintiffs are allowed to stand, Defendants' requests for additional relief (*i.e.* the requests for production of communications and for a protective order) remain independently ripe. ECF No. 71 at 9-10.

3

### III. THE COURT HAS AUTHORITY TO SUPERVISE THE NOTICE PROCESS INDEPENDENTLY OF RULE 12(F).

Plaintiffs argue that Rule 12(f) applies only to "pleadings" and that consent forms are not pleadings. This attacks a straw man. Defendants' Motion was not filed exclusively under Rule 12(f)—it expressly invoked the Court's inherent, broad supervisory authority over FLSA collectives, including the power to "enter appropriate orders governing the conduct of counsel and the parties." *See Gulf Oil*, 452 U.S. at 100; *Hoffmann-La Roche*, 493 U.S. at 171; *see also Randolph v. PowerComm Construction, Inc.*, 41 F. Supp. 3d 461, 464-65 (D. Md. 2014) (exercising supervisory authority to invalidate improperly obtained opt-out forms and enter a protective order). Because Defendants' Motion rests on the Court's supervisory authority—not solely on Rule 12(f)—Plaintiffs' opposition misses the mark on this front.

### IV. THE ADDITIONAL RELIEF REQUESTED BY DEFENDANTS IS WARRANTED.

As a threshold matter, Plaintiffs do not dispute Defendants' request that the Court order production of the communications at issue. Production of those communications should therefore be ordered.

Plaintiffs do dispute that a protective order is warranted, claiming that Defendants have not satisfied the *Gulf Oil* standard because there is no "clear record" of improper communications. *See* ECF No. 69 at 3. But the absence of a "clear record" is precisely the problem—and it is a problem of Plaintiffs' own making. During the notice period authorized by the Order, which permitted notice to be sent *only* to individuals who worked for Horizon in Colorado and/or South Carolina, opt-in consent forms materialized from five states outside of that limited scope. Even now, Plaintiffs have not provided any explanation of how these individuals learned of this action, were contacted, or were induced to file consent forms while the Court-approved notice was being

distributed only to individuals in Colorado and South Carolina.  The mere existence of Nationwide Plaintiffs, the timing of their purported joinder, and Plaintiffs' continued unwillingness to address their origin only underscores that inappropriate or unauthorized communications may have occurred. Defendants need not prove that misleading communications took place to warrant judicial inquiry. The Court inherently maintains supervisory authority over the notice process, and the conspicuous emergence of the Nationwide Plaintiffs justifies the exercise of that authority here. *See Gulf Oil*, 452 U.S. at 101.

## V.   STRIKING THE OPT-INS WOULD NOT "WASTE RESOURCES."

Plaintiffs argue that striking the opt-ins "would waste time and resources" because the Nationwide Plaintiffs would simply "file their own . . . complaint in this District." ECF No. 69 at 4 (citing *Ruggles v. Wellpoint, Inc.*, 687 F. Supp. 2d 30 (N.D.N.Y. 2009); *Kelley v. Alamo*, 964 F.2d 747 (8th Cir. 1992)).[3]  This argument misapprehends the two-step conditional certification process and, if accepted, would render this Court's Order a nullity.

At step one, the current stage, the Court (not Plaintiffs) determines who should receive notice. Via the Order, the Court limited the scope of the conditionally certified collective to Colorado and South Carolina. ECF No. 47, at 7-8. Enforcing the Order limiting the scope of the collective certainly would not be a waste of judicial resources—in fact, it would conserve them by ensuring that this action proceeds within the boundaries that this Court has already set.

To be sure, at step two and after discovery, the Court may expand or contract the collective based on actual evidence. To date, however, Plaintiffs have not even attempted to obtain new

---

[3] Plaintiffs also suggest, without support, that any subsequent claims would "relate back" to the filing of this action for statute of limitations purposes. *See* ECF No. 69 at 4 n.2. Defendants disagree. Under the FLSA, the statute of limitations continues to run until an individual files a written consent to join; it does not automatically relate back. *See* 29 U.S.C. § 256(b). What is more, this Court already denied Plaintiffs' request for equitable tolling. ECF No. 47, at 10-11.

evidence via discovery. Instead, they appear to have solicited additional putative plaintiffs and presented their existence as "new evidence" that justifies expansion.

Under this logic, any court order limiting a collective's scope could be circumvented simply by filing out-of-scope opt-ins and then arguing that striking them would be wasteful. Enforcing the Order is not a waste of resources; it ensures that expansion occurs through proper channels and not through self-help.

Plaintiffs also invoke the FLSA's remedial purposes, citing *Kelley* for the proposition that "a generous reading of the FLSA is appropriate." But the FLSA's remedial scheme is advanced through court-supervised collective actions—not by circumventing the Court's orders.  As the Supreme Court recognized in *Hoffmann-La Roche*, while FLSA collective actions "serve important goals," they also "present opportunities for abuse," which is precisely why "a district court has both the duty and the broad authority to exercise control." 493 U.S. at 171. Enforcing the Order would not frustrate the FLSA's remedial purpose. Rather, it would vindicate the statutory scheme by ensuring that collective actions proceed through proper, court-supervised channels. What Plaintiffs seek is not vindication of the FLSA's remedial goals, but usurpation of the Court's authority to manage and supervise the notice process—a result the statute certainly does not require and in fact does not permit.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their Motion and award such other relief as the Court deems just and proper.

6

Dated: April 10, 2026

**NIXON PEABODY LLP**

Jennifer K. Squillario

799 9th Street NW, Suite 500
Washington, DC 20001-5327
Tel: (202) 585-8000
jsquillario@nixonpeabody.com

Christopher J. Stevens (*pro hac vice*)
Vincent E. Polsinelli (*pro hac vice*)
677 Broadway, 10th Floor
Albany, New York 12207
Tel.: (518)427-2650
vpolsinelli@nixonpeabody.com
cstevens@nixonpeabody.com

*Attorneys for Defendants Horizon Land
Management, LLC and Ryan Hotchkiss*

7